Roldan Cardona **RODRIGUEZ,** et al., Plaintiffs,

v.

**MARBLE CARE INT'L, INC., Robert Segurola, Defendants.**

**Case No. 10–23223–CIV.**

United States District Court, S.D. Florida, Miami Division.

March 5, 2012.

Daniel T. Feld, K. David Kelly, Jamie H. Zidell, J.H. Zidell, Miami Beach, FL, for Plaintiffs.

Chris Kleppin, Kristopher Walter Zinchiak, Glasser Boreth & Kleppin, Plantation, FL, for Defendants.

### ORDER

DONALD L. GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Defendants' Verified Motion for Attorney's Fees and Sanctions for the Filing and Maintaining of a Frivolous Lawsuit [D.E. 79] and their three related supplements for additional fees [D.E. 89, 97 and 117].

**THE COURT** has conducted a *de novo* review of the file and is otherwise fully advised in the premises.

As part of its normal course of practice this Court refers all motions for costs and fees to its assigned Magistrate Judge to take all necessary and proper action as required by law. The parties are informed of this assignment in the Court's Scheduling Order [D.E. 23]. After final judgment was entered in this matter and the case closed, the assigned Magistrate Judge changed from Magistrate Judge Torres to Magistrate Judge Goodman. Subsequently, Defendants filed a Motion to Tax Costs [D.E. 72]. The Court referred the Motion to Tax Costs to Magistrate Judge Goodman [D.E. 74]. Defendants then filed the instant Motion for attorney's fees and sanctions [D.E. 79]. Magistrate Judge Goodman issued Reports and Recommendations on both motions [D.E. 87 and 88]. The Court adopted the Report and Recommendation on Defendants' Motion to Tax Costs [D.E. 102]. Plaintiffs filed objections to the Magistrate Judge's Report and Recommendation on Defendants' Motion for attorney's fees [D.E. 90]. One of Plaintiffs' objections was the Court's failure to specifically refer the Motion for attorney's fees to Magistrate Judge Goodman. To address this concern, the Court's specifically referred the Motion for attorney's fees to Magistrate Judge Goodman for the issuance of a Supplemental Report and Recommendation [D.E. 100].

Magistrate Judge Goodman issued the instant Supplemental Report recommending that Plaintiffs' motion for attorney's fees and sanctions be granted in part and denied in part [D.E. 121]. Specifically, the Magistrate Judge recommends that the Court award attorney's fees in the amount

of $8,340.00 against two of Plaintiffs' attorneys (J.H. Zidell and David Kelly) pursuant to 28 U.S.C. § 1927 but to deny the request for fees against attorney Daniel Feld and against Plaintiffs themselves. The Magistrate Judge also recommends that the fees be awarded jointly and severally against two of the three lawyers involved in the case and the law firm for which they work. The Magistrate Judge further recommends that the amount of fees to be awarded against Mr. Zidell, Mr. Kelly and the Zidell Law firm, jointly and severally, be calculated as follows: 1) $6,780.00 for fees incurred in connection with the first motion; 2) $980.00 for fees listed in the first supplement (with all time at $200 per hour); 3) $580 for fees listed in the second supplement (with all time at $200 per hour); and no award for fees listed in the "third" supplement.

The parties filed Objections to the Magistrate Judge's Report [D.E. 122 and 123]. However, upon review of the Objections and the Responses [D.E. 125] thereto, the Court finds the Objections without merit. Accordingly, it is

**ORDERED AND ADJUDGED** that United States Magistrate Judge Goodman's Report [D.E. 87] is hereby **NOT ADOPTED based upon the unique circumstances set forth above.** It is further

**ORDERED AND ADJUDGED** that United States Magistrate Judge Goodman's Supplemental Report on Attorney's Fees and Sanctions [D.E. 121] is hereby **RATIFIED, AFFIRMED and APPROVED** in its entirety. It is further

**ORDERED AND ADJUDGED** that Plaintiff's Motion for Attorney's Fees [D.E. 79] is **GRANTED** in part and **DENIED** in part. The total amount of attorney's fees awarded to Defendants against Mr. Zidell, Mr. Kelly and J.H. Zidell P.A., jointly and severally, is **$8,340.00**.

**DONE AND ORDERED.**

### *SUPPLEMENTAL REPORT AND RECOMMENDATIONS ON ATTORNEY'S FEES AND SANCTIONS*

This cause comes before the Court upon Defendants' Verified Motion for Attorney's Fees and Sanctions for the Filing and Maintaining of a Frivolous Lawsuit (DE # 79) and their three related supplements for additional fees (DE ## 89, 97 and 117). United States District Judge Donald L. Graham referred these matters to the Undersigned for a supplemental report and recommendations including the later-filed supplements (DE # 100).[1]

The Court has reviewed the Motion, Plaintiffs' Response (DE # 80) and Defendants' Reply (DE # 84) to the underlying motion. The Court also reviewed the two supplements labeled as supplements, Plaintiffs' verified response/objections to them (DE # 114), Defendants' reply (DE # 119), which included the incorporated third, untitled supplement to the fees request, and Plaintiffs' response (DE # 119).

For the reasons outlined below, the Court respectfully recommends that the District Court enter an Order **GRANTING IN PART AND DENYING IN PART** the motion (and the supplemental requests for additional fees).

---

1. The order of referral mentions the initial motion and the two supplements. In their reply memorandum (DE # 117), filed in further support of their two supplemental fees requests, however, Defendants seek a *third* supplement to their initial fees request. This third supplement is incorporated in a memorandum. It is not contained in a separate motion or request, nor is it included in a submission labeled "third supplemental request" or similar language. Nevertheless, Judge Graham entered an additional referral (DE # 120) to encompass the additional fees requested in the reply memorandum (i.e. the third supplement).

Specifically, the Court recommends that the District Court enter an award for attorney's fees in the amount of **$8,340.00** against two of Plaintiffs' attorneys (J.H. Zidell and K. David Kelly) pursuant to 28 U.S.C. § 1927 but deny the request for fees against attorney Daniel Feld and against Plaintiffs themselves. Because there was more than one lawyer from the firm representing the Plaintiffs, and for the additional reasons below, the Court also recommends that the District Court award fees jointly and severally against two of the three Plaintiffs' lawyers involved in the case *and* the law firm for which they work.

The Court is not recommending a fees award against the law firm itself under Section 1927, however, as the statute applies to "attorneys," not to law firms. This distinction will be discussed in greater detail in the body of this Report, but this distinction is ultimately of little significance, as the Report recommends a fees award against the law firm itself under the Court's inherent power.

As outlined below, however, the Court is significantly reducing the amount of fees because (1) Defendants are not entitled to fees for the *entire* case—only from the point where Plaintiff's claim was not colorable, and (2) Defense counsel engaged in duplicative, unnecessary or inefficient legal work.

In addition, the Court has reviewed the file again since it first entered its initial Report and Recommendations and has determined that its conclusions about fees need to be slightly revised in light of additional information. Specifically, the fees discussed in the first Report (DE # 87) will be further reduced to adequately address concerns over inefficient billing.

## I. *Introduction*

Some commentators describe litigation as war. In fact, attorney Frederick L. Whitmer authored a book entitled "Litigation is War: Strategy & Tactics for the Litigation Battlefield." [2] But if litigation is war, then it is a war fought under rules which prohibit and restrict certain tactics. One unavailable tactic is to pressure a defendant by pressing a frivolous lawsuit.

History's most-famous real warriors have also condemned the practice of fighting meritless battles. To provide one illustration, Chinese warfare expert Sun Tzu, in "The Art of War," extolled the strategic virtues of a warrior who "knows when to fight and when **not** to fight." [3] (emphasis added). Sun Tzu noted that this rule applies even if a ruler (or in the litigation context, perhaps a client or managing law firm partner) wishes otherwise: "If fighting is reasonably sure to result in victory, then you must fight, even though the ruler forbid it; if fighting promises not to result in victory, then you must not fight, even at the ruler's bidding."

As outlined in this Supplemental Report, Plaintiffs' counsel failed to follow the well-established advice to voluntarily give up a losing fight which could not be won by Plaintiffs. To use a contemporary, musical version of the rule Plaintiffs' counsel did not follow, they chose to ignore the folksy wisdom passed on in the hit song *The Gambler*, sung by Kenny Rogers: "you've go to know when to hold 'em, **know when to fold 'em**/ know when to walk away, know when to run." [4] (emphasis added).

---

2. The book was published in May 2007 by West Legalworks. http://www.thelenreid.com/index.cfm?section=press&function=View&press_id=275 (last visited June 27, 2011).

3. http://www.philosophyblog.com.au/quotes-from-the-art-of-war-by-sun-tzu (last visited June 27, 2011)

4. Written by Don Schlitz, the hit song won Kenny Rogers the Grammy award for best

In the context of this lawsuit brought under the Fair Labor Standards Act (FLSA) for alleged failure to pay overtime wages, Plaintiffs' counsel pursued the case even though they lacked the requisite evidence to establish the necessary FLSA coverage under the "enterprise" or "individual coverage" theories. Consequently, the District Court granted Defendants' summary judgment motion (DE # 66), which was *not* appealed.

In their motion for attorney's fees and sanctions, filed after the entry of summary judgment, Defendants specifically noted that they were *not* requesting a hearing. In their response in opposition to the fees motion (DE # 80), Plaintiffs requested neither an evidentiary hearing nor any other type of hearing to advance oral argument. Given the lack of a request for a hearing and the well-developed record (e.g., many of the arguments asserted here were previously submitted as part of the summary judgment motion litigation), the Court does not believe a hearing is necessary to make this Supplemental Report and Recommendations.[5]

## II. *General Overview and Procedural Background Surrounding Summary Judgment*

Defendant Marble Care Int'l, Inc. is a small, local floor finisher with one location in Broward County. (DE # 66.) Marble Care, owned by Codefendant Robert Segurola, employed four workers, a fact acknowledged by Plaintiffs' counsel at a discovery hearing. (DE # 86, pp. 24–25.) Plaintiffs worked for Defendants as basic laborers, doing floor polishing, for approximately two to six months during 2010. (DE ## 5, 66.)

Plaintiffs filed an Amended Complaint alleging FLSA overtime violations. (DE # 5.) Plaintiffs alleged, albeit upon information and belief, that "the Defendant Corporations" (sic)[6] "grossed over $500,000 annually for the relevant time period." (*Id.* at ¶ 11.) They also alleged that "Defendants' business and the Plaintiffs' work for the Defendants affected interstate commerce" and that "Plaintiffs' work for the Defendants was actually in and/or so closely related to the movement of commerce while he (sic) worked for the Defendants that the Fair Labor Standards Act applies to Plaintiffs' work for the Defendant."

In response to the Amended Complaint, Defendants filed a motion to dismiss on October 21, 2010. Defendants attached Robert Segurola's affidavit to the motion. The motion and affidavit alerted both the Plaintiffs and the Court to the significant point that Marble Care's gross annual revenues for the relevant year did not exceed $500,000.00. They also explained that Marble Care had *never* earned annual gross revenues of more than $500,000.00 since its creation in 1993. (DE # 8.) Based on this argument, Defendants contended that they were not subject to the FLSA and sought dismissal.

---

male country vocal performance in 1980. Clocking in at 3 minutes, 32 seconds, this 1978–released classic contained other lyrics, passed on by the fictional gambler, which, if followed in this case, would have caused Plaintiffs' counsel to avoid a fees award or, at a minimum, to benefit from a reduced award: "the secret to survivin' is knowing what to throw away" http://en.wikipedia.org/wiki/The_Gambler_(song) (last visited June 27, 2011).

5. *Murray v. Playmaker Servs., LLC*, 325 Fed. Appx. 873, 874 (11th Cir.2009) (affirming fees award against Plaintiff's counsel in FLSA case and noting that it would not consider argument that the district court should have held an evidentiary hearing because the argument was not made to the district court).

6. Plaintiffs named only one corporation as a defendant.

Defendants also filed a separate, but similar, motion to dismiss approximately three weeks later. Specifically, on November 11, 2010, Defendants filed a motion to dismiss for lack of subject matter jurisdiction and, alternatively, to convert the motion to dismiss into a summary judgment motion. (DE # 11.) Similar to the first motion to dismiss, this second motion also explained that the Court lacked FLSA jurisdiction because Marble Care did not exceed the $500,000.00 gross annual sales threshold for 2010 and was not going to come anywhere close to reaching that critical dollar amount. Because Marble Care had not prepared or filed its 2010 tax return as of November 2010, Defendants attached their bank statements and a supporting affidavit to establish its annual revenue in the relevant period. (DE ## 11, 11–1, 11–2.) These bank records demonstrated that Marble Care's gross annual sales for the previous twelve-month period (from November 2009 through October 2010) was approximately only *$181,-000.00*—significantly less than the $500,000.00 statutory threshold. The motion to dismiss also explained why the other theory of FLSA coverage—i.e., individual coverage when the employee is "engaged in commerce or in the production of goods for commerce"—was inapplicable.[7]

The District Court denied the motion to dismiss (DE # 11) without prejudice. In doing so, the District Court noted that a "limited amount" of discovery "limited to the issue of subject matter jurisdiction" would help the Court rule on the summary judgment issue of "whether the FLSA applies to this matter." (DE # 19, p. 2.) The District Court also advised the parties that the motion could be renewed upon the completion of the limited discovery period and provided the parties with 30 days in

which to conduct discovery "on the question of whether this action is subject to the FLSA." The District Court explained that it would consider the issue again on a renewed summary judgment motion.

Consistent with the District Court's order, Defendants filed a new summary judgment motion on January 18, 2011. (DE # 35.) This motion contained the same arguments that Defendants raised in their earlier motions: i.e., that Plaintiffs could not pursue their FLSA claims for allegedly unpaid overtime because they had not demonstrated the requisite FLSA coverage. A week before Defendants filed their second summary judgment motion, Plaintiffs filed a motion for enlargement of the discovery period and the summary judgment deadlines. (DE # 34.) Plaintiffs' motion was filed the day after the discovery period ended. Defendants objected to Plaintiffs' motion for additional discovery time and for enlargement of the summary judgment deadlines. (DE # 39.) Instead of substantively responding by the motion response deadline (which had not been extended, as the District Court had not ruled on the motion), Plaintiffs then filed what they described as a "notice of inability to respond" to the summary judgment motion. This notice (DE # 41) was filed on the day the substantive response to the summary judgment motion was due.

While the motion for enlargement was pending, the parties participated in a discovery hearing before Magistrate Judge Edwin G. Torres on February 4, 2011. (DE # 44.) During this hearing, the Court discussed the $500,000.00 jurisdictional limit and emphasized the likelihood that Plaintiffs would not be able to establish the threshold because the employer is

---

7. Under this method of establishing coverage, the Plaintiffs' mere use of goods which traveled in interstate commerce is insufficient by itself to generate individual coverage under the FLSA. *Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264, 1267 (11th Cir.2006).

a small, local company with less than a handful of employees.

The following excerpts from the hearing transcript (DE # 86) contain discussions about Plaintiffs' need to prove that Marble Care's annual revenues exceeded $500,000.00 for the relevant year:

> *The Court:* Yes. And while I read this [a portion of a deposition], do you have any basis to believe that a marble refinisher is going to make more than $500,000 a year?
>
> *Mr. Kelly* [8]: I can't prove it. I mean, that's all I can say. You know, I can make assertions, obviously, depending on the business. (emphasis added).
>
> *The Court:* How many employees does he have?
>
> *Mr. Kelly:* What is that?
>
> *The Court:* How many employees does he have?
>
> *Mr. Kelly:* I don't have his deposition transcript. I remember him talking about it. I mean, I think he said something or he was saying something about maybe 4. I mean, it could be. I think that is what he testified to.

(*Id.* at pp. 24–25.)

> *Mr. Kelly:* You know, the personal jibes aside, I would just point out there is a Middle District case that it often cited by us, the Daniel Pizza Zone case, that these issues are not in the hands of the plaintiffs. This is not information that my clients are going to have. I mean, you know, obviously if it is a real blatant example, if it is a little hot dog stand on the corner and they make all of this stuff locally, and we know that they get paid $20 a day, I mean something like that, you know.
>
> *The Court:* But this is kind of like that, isn't it? It is a marble refinisher.

> *Mr. Kelly:* You know, I mean I don't even know the value of the machines. I mean, you know, they have decent equipment.
>
> *The Court:* How many times have you hired a marble refinisher?
>
> *Mr. Kelly:* Never.
>
> *The Court:* Okay. All right.
>
> *Mr. Kelly:* I just don't know. You know, you can have so much knowledge of the business.
>
> *The Court:* I guess to some extent if the bank statements don't support your theory, then there has to be some other basis upon which you would be able to do that.

(*Id.* at pp. 39–40.)

> *The Court:* All right. I am going to give him the bank statements from 2008 to—you have given him the bank statements from 2009 to 2010, right?
>
> *Mr. Zinchiak:* So far what we have given him is November of 2009 through December of 2010.
>
> *The Court:* All right. So give him January through November of 2009. Complete 2009. If that doesn't give you any more information to then do something, then you may be out of luck. So I will give you that.

(*Id.* at pp. 43–44) (emphasis added).)

At the February 4, 2011 hearing, Magistrate Judge Torres ordered Defendants to produce by February 11, 2011 Marble Care's bank statement from January 2009 through November 2009 and Robert Segurola's bank statements from January 2009 through December 2010. (DE # 48.)

On February 18, 2011, while their motion to extend the summary judgment motion response deadline was pending (and

---

**8.** Attorney K. David Kelly is one of Plaintiffs' attorneys. He is an attorney with J.H. Zidell, P.A. Attorney Kristopher Zinchiak is one of Defendants' lawyers. These two attorneys argued for their clients at Magistrate Judge Torres' February 4, 2011 discovery hearing.

approximately three weeks after expiration of the deadline), Plaintiffs filed a response to the summary judgment motion. (DE # 49). Defendants moved to strike the Response as untimely (DE # 52) and then filed a reply to their summary judgment motion (DE # 56).

The District Court did not substantively rule on Defendants' motion to strike Plaintiffs' response to the summary judgment motion. Instead, it granted Defendants' summary judgment motion (DE # 66) and denied all pending motions as moot.

In its March 15, 2011 Summary Judgment Order, 2011 WL 918634, the District Court determined that Plaintiffs provided no evidence disputing that Defendants' gross annual sales volume in 2010 was less than $500,000.00, which means that Plaintiffs did not establish the minimum sales requirement for enterprise coverage. (*Id.*)

In addition, the Court concluded that Plaintiffs likewise failed to establish "individual coverage" under the FLSA. Plaintiffs had attempted to rely on the "engaged in commerce" method of establishing individual coverage. *See Thorne v. All Restoration Servs., Inc.*, 448 F.3d 1264 (11th Cir.2006). In order to meet the "engaged in commerce" prong, the employee "must be directly participating in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, *e.g.*, transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, *e.g.*, regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Id.* at 1266.

Defendant Segurola submitted a sworn declaration that Defendants did not purchase supplies from out of state and did not engage in out-of-state credit card transactions. (DE # 35–1.) In response, Plaintiffs submitted Mr. Rodriguez's affidavit, claiming that he used products manufactured out of state. (DE # 50–1.) Nevertheless, as the Court noted, Mr. Rodriguez previously testified that he never ordered or purchased supplies for Defendants and had no idea of the origin of the supplies or products used by Defendants. Therefore, the Court determined that Plaintiffs failed to provide any credible evidence that they handled goods "in commerce"—a finding which meant that Plaintiffs did not have FLSA individual coverage either.

Because Plaintiffs had not met their burden of establishing FLSA jurisdiction on either enterprise or individual coverage, the Court held, Defendants' summary judgment motion would be granted. The Court also entered a final judgment in Defendants' favor. (DE # 71.)

Plaintiffs did not appeal either the Order granting summary judgment or the Final Judgment.

Defendants have now filed a verified motion for attorney's fees against the three lawyers who represent Plaintiffs, their law firm and the two Plaintiffs. (DE # 79.) Defendants identify two sources of authority to support their request: 28 U.S.C. § 1927 and the Court's inherent power to sanction bad faith conduct as part of its power to control litigation. Defendants' motion also mentions Local Rule 7.3, but that rule merely provides a procedural framework for seeking fees; it does not independently create additional substantive grounds for a fees award.

### III. *History of the Fees Litigation*

After obtaining summary judgment, Defendants filed a motion for fees against several of the defense attorneys and their law firm (DE # 79.) The motion specifically noted that Defendants did not desire a hearing. Plaintiffs opposed the motion (but did not request a hearing, evidentiary

or otherwise). (DE # 80.) Defendants submitted a reply (DE # 84) and the Undersigned entered a Report and Recommendations (DE # 87).

In the initial Report, the Court determined that fees should be awarded—but for an amount significantly less than requested. The Report also noted that Defendants could submit a supplement if it wished to recover fees incurred after May 17, 2011 (DE # 87, p. 28, n. 19).

Defendants filed a supplemental request for additional fees (DE # 89) and Plaintiffs filed objections to the Report (DE # 90). Defendants also filed objections to the Report (DE # 93), arguing that the fees should be awarded from the inception of the lawsuit (in September 2010), rather than from February 2011, the date used in the Report as the starting date for accruing fees. The parties filed responses to each set of objections (DE ## 94, 95) and Defendants filed what they deemed a "reply" to Plaintiffs' response (DE # 96).[9] Defendants then filed a second supplement for fees (DE # 97).

**After** the 29–page Report was issued, Plaintiffs filed a formal request for an evidentiary hearing (DE # 104), which the Court denied (DE # 113). Plaintiffs then filed a verified, omnibus response to both supplemental fee requests. (DE # 114.) In this verified response, Plaintiffs argued that the underlying fees motion is substantially similar to another fees motion previously filed by the very same defense counsel in another case. Plaintiffs referenced the motion in the other case (*Dent v. Giaimo, D.O., P.A.,* 665 F.Supp.2d 1295 (S.D.Fla.2009)) and also argued that the time billed by the senior, name partner in the defense firm (for legal services at issue in the two supplements) could have been (and should have been) performed by the relatively young associate attorney who performed most of the legal work in the prejudgment portion of the case.

## IV. *Applicable Legal Standards*

Section 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."

As the Eleventh Circuit has explained, the statutory language itself "makes clear that this section is not a 'catch-all' provision for sanctioning objectionable conduct by counsel." *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir.2003). In *Millon Air,* the appellate court also outlined the basic rules governing motions under Section 1927:

a. To justify an award, the attorney must engage in unreasonable and vexatious conduct.

b. The conduct must multiply the proceedings.

c. Something more than a lack of merit is required.

d. The statute was designed to sanction attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith."

---

9. Local Magistrate Rule 4 did not at the time authorize a "reply" to a response filed in opposition to objections, and the Court's Report therefore authorized (in a section entitled "objections") only objections and a response to them. Likewise, Fed. R. Civ. Pro. 72 provides that a party may file specific written objections to the magistrate judge's recommended disposition and further provides that a response to the objection may be filed. It does not, however, authorize a reply. Local Magistrate Rule 4 has since been amended, and, as of December 1, 2011, permits the filing of a reply in further support of objections.

e. Bad faith is the "touchtone" because the statute is "not about mere negligence."

f. A determination of bad faith is warranted when an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims.

*Id.* at 341 F.3d at 1225.

■ Because the statute mentions "attorneys" and because Defendants seek a fees award against both individual attorneys and their law *firm,* the Court needs to determine whether Section 1927 authorizes sanctions against law firms. The Court has not found an Eleventh Circuit case directly on point. Although there is a case which mentions, in passing, that a fees sanction may be awarded against "litigants, counsel and law firms who willfully abuse judicial process by conduct tantamount to bad faith," in that case the Eleventh Circuit did not directly discuss at all the issue of whether Section 1927 applies to law firms and it does not appear as though any appellant even raised the issue in the first place. *Avirgan v. Hull,* 932 F.2d 1572, 1582 (11th Cir.1991).[10]

The Eleventh Circuit's opinion in *Avirgan v. Hull* did not discuss Section 1927's applicability to law firms, but other federal appellate courts have tackled the issue head on and concluded that the statute does **not** apply to law firms. *BDT Prods., Inc. v. Lexmark Int'l, Inc.,* 602 F.3d 742, 750–752 (6th Cir.2010); *Claiborne v. Wisdom,* 414 F.3d 715, 722–724 (7th Cir.2005). At bottom, these appellate courts focused on the specific use of term "attorney" in the statute and the fact that law firms are not "admitted" to "conduct cases" in federal courts. They also analogized to the rationale in *Pavelic & LeFlore v. Marvel Entertainment Group,* 493 U.S. 120, 110 S.Ct. 456, 107 L.Ed.2d 438 (1989), where the Supreme Court considered the question of whether sanctions were possible against a law firm under an earlier version of Federal Rule of Civil Procedure 11. In *Pavelic & LeFlore,* the Supreme Court construed language permitting sanctions only against the "person who signed" the offending document and determined that the language could only refer to the individual signer, not to his partnership. *BDT Prods.,* 602 F.3d at 752 (quoting *Claiborne,* 414 F.3d at 722–23).

Based on these authorities and the Court's own assessment of the language in Section 1927, the Undersigned concludes that the statute cannot be used to support an award of fees against J.H. Zidell, P.A., the Plaintiffs' law firm here. *See also Sangui Biotech Int'l, Inc. v. Kappes,* 179 F.Supp.2d 1240, 1244–45 (D.Col.2002) (holding that statute did not apply to law firms, noting that the statute indicates that an attorney may be required to "satisfy

---

10. The fees award was against the individual plaintiffs, their attorney and the Christic Institute, which the appellate court described as a "tax-exempt law firm which funded the litigation." *Id.* at 1576 n. 3. The Eleventh Circuit also discussed the award of fees against the individual non-attorney Plaintiffs under Section 1927's language of having "unreasonably and vexatiously multiplied" the proceedings— even though the statute discusses sanctions against "any *attorney*" or other "person *admitted to conduct cases* in any court" (emphasis added). Therefore, it seems as though the parties did not consider the statute's applica-

bility to law firms and litigants and that the inclusion of the term "law firms" did not involve a direct analysis of the question of whether the statute authorizes sanctions against law firms. Likewise, it seems that the Eleventh Circuit did not intend the sentence to be an actual holding on the statute's applicability to law firms (as opposed to individual attorneys). Indeed, another appellate court, in commenting on the broad yet succinct language in *Avirgan v. Hull,* explained that the Eleventh Circuit "offered no reason for including law firms on that list." *Claiborne v. Wisdom,* 414 F.3d 715, 722–23 (7th Cir.2005).

personally" any award and also emphasizing that the duties imposed by the statute are not delegable).[11]

■ But under its *inherent powers,* a court can sanction an attorney and the attorney's law firm for bad faith litigation conduct. *Spolter v. Suntrust Bank,* 403 Fed.Appx. 387 (11th Cir.2010) (affirming award of fees against individual lawyer and his law firm pursuant to the court's inherent powers); *In re Mroz,* 65 F.3d 1567, 1576 (11th Cir.1995) ("there is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith"); *Herard v. ATN Rest., Inc.,* No. 07–60269–CIV, 2008 WL 123596 (S.D.Fla. Jan. 8, 2008) (awarding fees against plaintiff's law firm in FLSA case under inherent power doctrine); *Maale v. Kirchgessner,* No. 08–80131–CIV, 2011 WL 1458147 (S.D.Fla. Apr. 15, 2011) (awarding sanctions against attorney and his former law firm, jointly and severally, based upon the Court's inherent power).

Thus, regardless of whether the Court relies on § 1927 or the Court's inherent power, bad faith is required for a fees award against Plaintiffs' attorneys and their law firm.

■ If egregious enough, pursuing a claim "without reasonable inquiry into the underlying facts" can constitute the bad faith necessary to support a fees sanction. *Barnes v. Dalton,* 158 F.3d 1212, 1214 (11th Cir.1998) (affirming fees award against plaintiffs' counsel under court's inherent powers for bad faith pursuit of allegedly frivolous employment discrimination claim). *See also Dent v. Giaimo, D.O., P.A.,* 665 F.Supp.2d 1295, 1305 (S.D.Fla.2009) (awarding sanctions against plaintiff's counsel in FLSA case for not making adequate inquiry into facts before filing the lawsuit because "such inaction is tantamount to bad faith"); *Ortiz v. D & W Foods, Inc.,* 657 F.Supp.2d 1328, 1330–31 (S.D.Fla.2009) (awarding fees against Plaintiff's counsel in FLSA case and noting that the pre-suit investigation did not concern the $500,000.00 gross revenue threshold issue).

## V. *Analysis*

■ Defendants' motion for fees concerns an FLSA lawsuit filed in the Southern District of Florida. More FLSA cases are pending in the Florida federal courts than in any other state. As of December 31, 2010, more FLSA cases (8,915) were pending in the Southern District of Florida than in all of the federal courts in New York, California, Illinois, Pennsylvania, New Jersey, Michigan and Massachusetts *combined* (8,883). In fact, the number of FLSA cases pending in Florida federal courts (14,572) represented more than 37% of all FLSA cases pending in all of the federal district courts in the entire country (39,275). Based on these statistics, it is not an exaggeration to say that "Florida—especially South Florida—is the epicenter of federal litigation under the Fair Labor Standards Act." [12]

In the instant lawsuit, J.H. Zidell, P.A. is the Plaintiffs' law firm. Lawyers from that firm filed the lawsuit and litigated it. Attorney J.H. Zidell signed both the initial Complaint (DE # 1) and the Amended Complaint (DE # 5). Attorney K. David Kelly signed Plaintiffs' Response in Opposition to the initial Motion to Dismiss (DE # 9) and their Response in Opposition to Defendants' Motion for Lack of Subject Matter Jurisdiction (DE # 13). Mr. Kelly

---

11. Defendants do not address the issue in their motion or reply. Instead, they assume without discussion that 28 U.S.C. § 1927 applies to the law firm itself.

12. Frank Scruggs, *New Rules for Tipped Workers May Add Litigation in Florida,* Daily Bus. Rev. June 15, 2011, at A4, A6.

also signed Plaintiffs' Notice of Inability to Respond to Defendants' Motion for Summary Judgment (DE # 41), Plaintiffs' Response in Opposition to Defendants' Motion for Summary Judgment (DE # 49) and Plaintiffs' Statement of Material Facts in Opposition to Defendants' Motion for Summary Judgment (DE # 50). Mr. Kelly also appeared for Plaintiffs at the February 4, 2011 discovery hearing (DE # 86) and signed Plaintiffs' Response in Opposition to Defendants' Motion for Fees and Sanctions (DE # 80).

Although Defendants also seek a fees sanction against attorney Daniel Feld, it appears as though Mr. Feld did not sign any of the pleadings, motions or memoranda in the case. According to the Florida Bar's website, Mr. Feld is (or was) a young associate with the J.H. Zidell, P.A. law firm, having been admitted to the Florida Bar in April 2007. Mr. Kelly, on the other hand, was admitted to the Florida Bar in October 1997. Mr. Zidell was admitted in 1994.

Defendants argue the Plaintiffs and their counsel pursued a frivolous FLSA claim because they continued to press the lawsuit even though they had no grounds to establish either enterprise coverage or individual coverage. They underscore Plaintiffs' concessions that they had no idea of the amount of Marble Care's gross revenues for the relevant year and affirmatively stated that they did nothing before filing the lawsuit to determine the amount of gross revenues to see if they reached the requisite $500,000.00 threshold. In addition, Plaintiffs conceded that they would defer to Defendant Segurola, the owner of Marble Care, for any questions concerning gross revenues, since nei-

ther Plaintiff had ever seen Marble Care's bank records or financial records.

In addition, Defendants further argue that Plaintiffs never sent a demand letter, never first pursued a pure bill of discovery (rather than filing a lawsuit) to see whether the jurisdictional threshold could be met and virtually ignored bank records produced early in the litigation.

As United States District Judge Alan S. Gold noted when awarding fees in an FLSA case in *Ortiz*, a plaintiff's counsel's failure to file "an affidavit attesting to his pre-suit investigations or to his good faith belief that the action was not frivolous" is an "important" factor. 657 F.Supp.2d at 1330. In the instant case, Plaintiffs' Response to the sanctions motion was not verified and was not accompanied or supported by an affidavit. Likewise, the Response did not explain the steps Plaintiffs and their counsel took, if any, to investigate these fundamental jurisdictional FLSA issues before filing the lawsuit.

Instead of providing evidence of a good faith pre-suit inquiry, Plaintiffs' response raised arguments which the district court already rejected in its order granting summary judgment to Defendants, an order which, as previously noted, was not appealed.

For example, Plaintiffs say they were "inhibited" from prosecuting the issue of FLSA coverage because Defendants did not file tax returns for 2009 and 2010 (and Plaintiffs thereby had to rely on bank records and sworn declarations, neither of which even remotely supported the jurisdictional arguments and theories advanced by Plaintiffs).[13] But Judge Graham's summary judgment order already rejected the argument that "Defendants should not be

---

13. Plaintiffs' 2010 tax year income tax return would not have been due until April 15, 2011 and Judge Graham's summary judgment Order was entered a month earlier, on March 15, 2011. Plaintiffs now argue (DE # 80, p.

4) that Defendants were under a continuing disclosure obligation to provide the tax returns, but Plaintiffs did not submit any evidence to suggest that either the 2009 or 2010

allowed to benefit from not filing their tax return with their FLSA coverage defense." (DE # 66, p. 5.) Moreover, the FLSA does not require a party to prove annual gross sales through only tax returns and Plaintiffs have not cited any case or other authority imposing such a restriction.

Plaintiffs also complain about their purported inability to adequately discover information related to the FLSA jurisdictional issues. They say they were not allowed access to all of Defendants' contracts during the relevant period. But United States Magistrate Judge Torres already rejected that argument at the February 4, 2010 discovery hearing and Plaintiffs never pursued objections to that ruling.

Plaintiffs' opposition to the sanctions motion also raises the insufficient discovery theory, but they asserted this argument in their opposition (DE # 49) to Defendants' summary judgment motion (where they asked for an additional 60 days of discovery). The district court entered summary judgment anyway, implicitly overruling or rejecting this "insufficient time" argument. This approach is consistent with the discovery philosophy adopted by other federal judges in this district when confronted with the $500,000.00 threshold issue in FLSA cases. *E.g., Deli-*

*sle v. LYG Corp.*, 535 F.Supp.2d 1266 (S.D.Fla.2008) (allowing 34 days for discovery).

In their zeal to avoid sanctions by raising myriad arguments in their Response, Plaintiffs disclosed information about the substance of settlement negotiations at the settlement conference. (DE # 80, pp. 13–14.) In their Response (where the settlement conference communications were disclosed), Plaintiffs say that "the undersigned [law] Firm does not consider this statement violative of mediation confidentiality because it is offered herein solely to argue against bad faith." (DE # 80, p. 14, n. 2.) They did not cite any authority for this purported rationale. Defendants contend that the disclosure was improper.

This Court's analysis of whether fees should be awarded for bad faith pursuit of a frivolous FLSA claim does not depend on whether Plaintiffs' counsel improperly disclosed information from a court-directed settlement conference in their opposition to the fees motion. However, Local Rule 16.2(g)(2) expressly restricts the use of information derived from a mediation conference. Specifically, the Rule provides: "All proceedings of the mediation shall be **confidential** and are privileged in all respects as provided under federal law and Florida Statutes § 44.405.[14] The proceed-

---

tax returns had been filed by the time of the summary judgment litigation in early 2011. To the contrary, Plaintiffs concede that "it is still Plaintiffs' understanding that the Defendants have not filed their tax returns." (DE # 80, p. 4.) Given this concession, it is difficult to grasp the logic behind Plaintiffs' gripe about not being provided with still-not-filed tax returns. Plaintiffs now argue that Defendants "should have filed and immediately provided" the tax returns but they cite no authority to support the argument that a party's tax-planning practices should compel the filing of tax returns in order to provide them to a litigant. Setting aside this analytical gap, Plaintiffs' argument ignores the all-important fact that bank records were provided.

14. The statute provides, in subsection (1): "Except as provided in this section, **all mediation communications shall be confidential.** A mediation participant **shall not disclose** a mediation communication to a person other than another mediation participant or to a participant's counsel. A violation of this section may be remedied as provided by s. 44.406. **If the mediation is court ordered,** a violation of this section may also subject the mediation participant to **sanctions** by the court, including, but not limited to, costs, attorney's fees, and mediator's fees." (emphasis added). Florida Statute § 44.406 provides remedies for a mediation participant who knowingly and willfully discloses a mediation communication in violation of § 44.405. In relevant

ings **may not be** reported, recorded, placed into evidence, made **known** to the Court or jury, or construed for any purpose as an admission against interest." (emphasis supplied).

Neither the Local Rule nor Florida Statutes § 44.405 has an express exception authorizing disclosure of confidential mediation communications "to argue against bad faith"—the purported rationale used by Plaintiffs' counsel. Therefore, although Defendants have not asked the Court to sanction Plaintiffs' counsel for violating mediation confidentiality, it seems likely that the disclosure violated the Local Rule. Because the Parties have not briefed the issue, Defendants have not asked for sanctions on this point, and because this issue is not necessary to resolve the underlying fees motion, the Court will not now render a finding on whether the mediation confidentiality rule was violated.

But regardless of whether Plaintiffs' counsel improperly disclosed confidential settlement/mediation conference discussions in a publicly filed memorandum (and it certainly appears—albeit without further research and reviewing memoranda from the parties—as though he did), the conference occurred on March 3, 2011—*after* Plaintiffs filed their opposition to the summary judgment motion.

Defendants' motion for fees is not based on the mere fact that Plaintiffs lost a summary judgment motion. If that were the scenario, then the motion would be denied. Instead, the motion flows from the fact that Plaintiffs and their counsel did not conduct a pre-suit inquiry to determine if Marble Care was subject to an FLSA claim under either the enterprise or individual coverage theories, filed their claim anyway, sought to take irrelevant discovery in order to impose financial pressure on Defendants and **persisted in prosecuting the claim** even though they never had the necessary evidence to establish FLSA jurisdiction and **ignored unrebutted evidence** demonstrating that Marble Care was not subject to the FLSA claim.

Plaintiffs' attorneys are hardly novices to FLSA cases. To the contrary, they are competent, experienced and extremely active in litigating FLSA cases. According to a CM/ECF query run on February 15, 2012, Mr. Zidell has been involved as an attorney in 1,078 cases since 1997 (with most of those cases in the past 11 years, from 2000 onward) and Mr. Kelly has been involved in 150 cases since 2006. Although ignorance of the law concerning FLSA jurisdiction would not be a legitimate defense to a fees request based on bad faith pursuit of a frivolous FLSA claim, these two attorneys would not have that argument available in any event.

Because Marble Care is a small, local company with less than a handful of employees, Plaintiffs' counsel should have known from the start that they would confront significant and probably insurmountable obstacles to establishing the requisite jurisdiction. Plaintiffs' counsel did not send a pre-suit demand letter or first seek a pre-suit bill of discovery—two factors the *Ortiz v. D & W Foods, Inc.* court deemed significant. In addition, Plaintiffs' counsel had little or no basis to believe that Marble Care had annual sales revenues of $500,000.00 because their clients had no access to the books and records and therefore had no reasonable estimate of the gross sales figures. Although the bank records provided demonstrated that Marble Care's annual revenues were not even remotely close to reaching the $500,000.00 threshold, Plaintiffs persisted in their claim. Defendants provided the bank rec-

part, it provides that a participant "shall" be subject to remedies, "upon application by any party to a court of competent jurisdiction,"

including compensatory damages and attorney's fees.

ords on November 11, 2010, as exhibits to their motion to dismiss. Indeed, Plaintiffs' counsel conceded as late as February 4, 2011 (during the discovery hearing) that he could not prove the $500,000 revenue threshold (and he did not have evidence to demonstrate individual coverage, either).

After conducting additional discovery and after Defendants filed their second summary judgment motion, Plaintiffs should have conceded the point and either agreed not to submit an opposition to the summary judgment motion, voluntarily dismissed the action or acquiesced to the entry of summary judgment. Had they done any of these things, Plaintiffs and their counsel likely would not be on the wrong side of a motion for fees and costs. In fact, in two other recent cases where the same defense counsel was involved, the plaintiffs (unlike the Plaintiffs in the instant case) did not persist in mounting a losing jurisdictional battle—and no fees motion was filed against those plaintiffs or their counsel. *Delisle v. LYG Corp.*, No. 07–61893–CIV, 2008 WL 1821518 (S.D.Fla. Apr. 16, 2008) (plaintiff acquiesced to Defendants' motion for summary judgment, which challenged FLSA subject matter jurisdiction); *Casseus v. First Eagle, LLC*, No. 07–23228–CIV, 2008 WL 1782363 (S.D.Fla. Apr. 18, 2008) (FLSA plaintiff engaged in discovery and then agreed to not file a memorandum in opposition to defendants' summary judgment motion). In other words, in those other cases the plaintiffs realized that the suit could not be maintained and wisely decided not to continue fighting for the non-existent FLSA claims.

But Plaintiffs and their counsel did not adopt this logical approach. Thus, under these circumstances, sanctions (in the form of an award of reasonable attorney's fees) are warranted. *See Murray v. Playmaker*

*Servs., LLC,* 325 Fed.Appx. 873, 874 (11th Cir.2009) (affirming fees award against Plaintiff's counsel under Section 1927 in an FLSA case); *Ortiz v. D & W Foods,* 657 F.Supp.2d at 1330.

## VI. *Determining Who Should Be Sanctioned*

■ Defendants want the Court to sanction Plaintiffs' attorneys (Mr. Zidell, Mr. Kelly and Mr. Feld), the law firm where the attorneys work (J.H. Zidell, P.A.) and the two Plaintiffs themselves.

Although there is authority to support an award against the individual Plaintiffs, there is also authority suggesting that the Court can exercise discretion and decline to sanction the non-attorney litigants. For example, in *Murray v. Playmaker Services, LLC,* 548 F.Supp.2d 1378 (S.D.Fla. 2008), the court sanctioned plaintiff's counsel but not plaintiff. In reaching this conclusion, the court there explained, "while plaintiff's counsel may have possessed the skill necessary to determine whether the suit was meritorious, it does not appear that plaintiff herself could make that determination." *Id.* at 1382. Moreover, the *Playmaker Services* court provided additional reasoning which applies with equal force here: "There is nothing in the record to indicate that plaintiff had any legal training or otherwise had any special knowledge regarding this area of the law to convince her that her claim was meritless and that she should therefore abandon it." *See also Dent,* 665 F.Supp.2d at 1301 (awarding fees against plaintiff's counsel in FLSA case but not against plaintiff because she "cannot be held responsible for legal conclusions, regardless of their obviousness ... In fact, one would imagine that the vast majority of employees assume they can sue an employer who does not pay them overtime").[15] *Cf. Ortiz,* 657

---

15. United States Magistrate Judge Ann Vitunac, who wrote the Report and Recommendation adopted by the court, provided an expla-

F.Supp.2d 1328 (awarding fees against plaintiff's counsel in FLSA action but not against the plaintiff).

Therefore, the Court is recommending that a sanction in the form of attorney's fees **NOT** be awarded against the two Plaintiffs.

As outlined earlier in this Report, attorney Daniel Feld did not sign any of the significant filings in this case. In addition, he appears to be a relatively young associate and Defendants have not in their motion for fees explained what, if anything, Mr. Feld did or failed to do which would demonstrate the bad faith necessary to support a fees award.[16] Therefore, the Court also recommends that the fees sanction not be awarded against Mr. Feld.

Thus, the Court recommends that the fees sanction be awarded only against Mr. Zidell, Mr. Kelly and the J.H. Zidell, P.A. law firm.

### VII. *Determining When the Bad Faith Litigation Began for Fees Calculation Purposes*

█ In their original motion, Defendants ask for a fees award for all the attorney's fees incurred from the start of the case, through August 10, 2011. The bulk of the requested fees is through May 17, 2011 (the date the fees motion was filed). Defendants ultimately filed three supplements, seeking fees through mid-February 2012.

To be sure, it would not be illogical to conclude that Plaintiffs' counsel is responsible for attorney's fees from the *inception* of the case because the lawsuit should not have been filed in the first place. However, Defendants filed a motion to dismiss the Complaint for the FLSA jurisdictional defects and then filed another motion to dismiss, which was converted to a summary judgment motion, asserting the same grounds. The Court did not then accept those arguments and did not immediately dismiss the case or enter summary judgment. Instead, it directed the parties to engage in additional discovery for 30 days, limited to the narrow jurisdictional issues under the FLSA.

Although Plaintiffs' counsel should certainly have been highly skeptical of the existence of the requisite jurisdictional grounds when they filed the lawsuit without knowing if there was evidence to support the fundamental FLSA requirements,

---

nation which seems to have been written about the instant case: "Accordingly, even if the claim was legally frivolous, the Court will not sanction Plaintiff for not being aware of the FLSA's jurisdictional requirements." *Id.*

**16.** As a practical matter, the Court realizes that young attorneys, while still full members of the bar responsible for their own behavior, are reliant upon their supervising attorney for guidance during the infancy of their careers. To the extent Mr. Feld was involved in litigating this case (his name is on the docket sheet thus demonstrating he had some, however minor, involvement) his participation likely at worst constituted negligence for following the (mis)lead of his more experienced supervising attorneys. This conclusion is suggested by the official comment to Rule Regulating the Florida Bar 4–5.2, Responsibilities of a Subordinate Lawyer, which provides that: "Al-

though a lawyer is not relieved of responsibility for a violation by the fact that the lawyer acted at the direction of a supervisor, that fact may be relevant in determining whether a lawyer had the knowledge required to render conduct a violation of the rules. For example, if a subordinate filed a frivolous pleading at the direction of a supervisor, the subordinate would not be guilty of a professional violation unless the subordinate knew of the document's frivolous character." Because Mr. Feld did not personally sign the filings discussed above, and absent additional evidence not before me that he was aware of their frivolousness but somehow played a deciding role in pressing ahead with the claims nonetheless, I would be hard pressed to determine that Mr. Feld "willfully abuse[d] the judicial process by conduct tantamount to bad faith." *Millon Air, Inc.,* 341 F.3d at 1225.

the fact is that Judge Graham afforded them additional discovery. Plaintiffs' counsel cannot necessarily be sanctioned for pressing forward at that time in light of Judge Graham's order.

But after entry of the order authorizing additional discovery and after discovery was provided, Defendants filed their summary judgment motion on January 18, 2011 (DE # 35). In that motion, Defendants referred back to the bank records they filed as attachments to their motion to dismiss. At that point (i.e., the filing of the January 18, 2011 summary judgment motion), it might be argued that Plaintiffs' counsel knew then that they had no claim to pursue because the threshold FLSA jurisdictional bars had not been cleared. However, Plaintiffs say they believed that additional discovery might still yield the information they lacked and they convinced Magistrate Judge Torres at the February 4, 2011 discovery hearing to order Defendants to produce a limited amount of additional discovery. At that hearing, Magistrate Judge Torres directed Marble Care to produce additional bank statements by **February 11, 2011**. (DE # 48.) Plaintiffs then submitted their opposition to the summary judgment motion on February 18, 2011. (DE ## 49, 50.)

Therefore, it should definitely have been clear to Plaintiffs' counsel as of **February 11, 2011**—when the time for any additional court ordered jurisdictional discovery had passed—that they had no grounds to establish FLSA jurisdiction. From that point, Plaintiffs' counsel "should have been aware that the suit was meritless." *Murray*, 548 F.Supp.2d at 1383, *aff'd by* 325

Fed.Appx. 873 (11th Cir.2009) (awarding $23,375.00 in fees against Plaintiff's counsel, calculated after the conclusion of discovery). To use a more-colorful, historical reference, Plaintiffs' counsel should have followed the logic of Demosthenes, the Athenian orator and statesman who fought in a great battle in 338 B.C. between the Athenians and the Macedonians. Demosthenes explained his decision to leave the battlefield by saying, "the man who runs away may fight again." [17] As of February 11, 2011, Plaintiffs' counsel should have given up the fight and conceded the absence of the FLSA thresholds.[18]

## VIII. *Lodestar Calculation*

█ The starting point to determine an objective estimate of the value of professional services is to calculate the lodestar amount—by multiplying a reasonable hourly rate by the number of hours reasonably expended. *Norman v. Hous. Auth. of the City of Montgomery*, 836 F.2d 1292 (11th Cir.1988). The lodestar method of calculating attorney's fees has become the "guiding light" of the federal courts' jurisprudence for calculating a reasonable attorney's fee. *Perdue v. Kenny A.*, — U.S. ——, 130 S.Ct. 1662, 1672, 176 L.Ed.2d 494 (2010). The lodestar looks to the prevailing market rates in the relevant community and "produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Id.* This ensures that a fee applicant used "billing judgment" and avoided billing for hours which were exces-

---

**17.** Trivia on Origins of Sayings—Live to Fight Another Day, http://www.trivia-library.com/b/origins-of-sayings-live-to-fight-another-day.htm (last visited June 27, 2011).

**18.** Plaintiffs and their counsel were certainly energetic in pursuing their goal, but "facts

are stubborn things" and "whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence." John Adams (1735–1826) (former U.S. President), http://www.brainyquote.com/quotes/quotes/j/johnadams134175.html (last visited June 27, 2011).

sive, redundant or unnecessary. *Norman*, 836 F.2d at 1301.

In their response to the initial fees motion, Plaintiffs purport to reserve the right to oppose the rate, hours and amounts sought be Defendants. They did not, however, actually submit any opposition. Plaintiffs' requested procedure violates Local Rule 7.3, which requires a party opposing hourly rates to submit an affidavit giving their firm's hourly rates or contingency fee arrangement for the case. Plaintiffs did not do this. Moreover, the local rule also requires the party opposing the fees request to "describe with reasonable particularity each time entry or nontaxable expense to which it objects." Plaintiffs have not done this either. Although the local rule also provides that a party may "move the Court to determine entitlement prior to submission on the issue of amount," Plaintiffs have not filed such a motion.

Therefore, Plaintiffs waived their right to challenge the hourly rate or the amount of fees at issue in the first motion. Nevertheless, the Court is still required to determine a *reasonable* fee, as Plaintiffs' waiver of their right to challenge the fee does not mean that the Court is required to simply and blindly accept the hourly fees requested by defense counsel.

For the first two supplements, however, Plaintiffs complied with the local rule and submitted a verified response, explaining the financial relationship between the party and the attorney. Specifically, Mr. Zidell explained (DE # 114) that he has a contingent fee arrangement with his client and that his hourly fee is $325. His veri-fied submission also notes that several magistrate judges in this district award him fees using this $325 hourly rate. In addition, Mr. Zidell's response to the two supplements challenges the hourly rates used by two of Defendants' lawyers, Chris Kleppin and Kristopher Zinchiak.

Concerning the hourly rate, counsel is seeking a blended rate of $300 per hour, the amount he has used in other cases where the defense lawyers involved in this case were also working together. There were two lawyers primarily involved in defending this case for Marble Care: Chris Kleppin and Kristopher Zinchiak. Mr. Kleppin is the senior attorney who primarily supervised and Mr. Zinchiak is the less-experienced lawyer who did much of the actual work. District court judges in this district have awarded Mr. Kleppin a $300 hourly fee in recent cases, so the Court will use that figure for Mr. Kleppin's time. *E.g., Dent,* 665 F.Supp.2d at 1306. However, the Court is not prepared to use that same hourly fee for time incurred by Mr. Zinchiak, who graduated from law school in 2009.[19] Instead, the Court, which is deemed an expert on the issue of hourly rates in this community and may properly consider its own knowledge and experience,[20] finds that $200 per hour is the market rate applicable to a lawyer of his limited experience in the labor and employment law defense market.[21]

### *Hours*

 As explained above, fees incurred after February 11, 2011 will be part of the sanctions award. In reviewing the time entries, the Court notes that the motion

19. http://www.floridabar.org/names.nsf (last visited June 27, 2011).

20. *Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994).

21. In his opposition to the two supplemental fee submissions, Mr. Zidell argues that Mr. Kleppin's hourly rate should be only between $175 and $225 and that Mr. Zinchiak's rate should be no more than $125. But Mr. Zidell notes that *he* receives $325 for his time and the reasons he proffers for awarding Mr. Kleppin only $175 per hour—a reduction of almost 45%—are not persuasive.

for fees and the reply memorandum (DE ## 79 and 84) are significantly similar to motions and memoranda which the same defense firm filed in other FLSA cases involving a similar issue, *Ortiz,* 657 F.Supp.2d at 1330 (awarding fees to defense firm because Plaintiffs' counsel failed to conduct any pre-suit investigation of "the ultimate question of whether Defendant grossed $500,000"); *Dent v. Giaimo, D.O., P.A.,* 665 F.Supp.2d 1295 (S.D.Fla. 2009). In fact, much of the argument in Defendants' motion for fees is copied verbatim from similar motions filed in other cases. In some instances, the cut-and-pasting tactics went on for several pages. Although some of the issues might not have been identical, much of the attorney's fee argument was, in fact, substantially similar to, if not identical to, defense counsel's prior submission in another FLSA case. Therefore, the Court will deduct 5 hours from the time Mr. Zinchiak incurred in connection with the fees motion and memoranda. In addition, it appears to the Court as though Defendants filed some submissions which were unnecessarily long and complex, leading to a further reduction of $3,000 on the initial motion.

Using the hours and fees and adjustments mentioned above, attorney Zinchiak worked 43.8 hours (at $200 per hour) and Mr. Kleppin worked 3.4 hours (at $300 per hour). Based on this calculation and the downward adjustments, the Court recommends that the amount of fees for the first motion, to be awarded against Mr. Zidell, Mr. Kelly and the Zidell law firm, jointly and severally, is $6,780.[22]

The Court will now analyze the three supplements.

As Plaintiffs correctly point out in their response objecting to the two supplements, it seems as though defense counsel switched roles immediately after the Court issued its initial Report (in which it recommended a fees award). For the initial motion, Mr. Zinchiak, an associate with far-less experience than Mr. Kleppin, performed most of the work for which Defendants sought fees. Mr. Zinchiak, of course, has a significantly lower billing rate than Mr. Kleppin. In the initial motion, Defendants contended that Mr. Zinchiak worked 118 hours and that Mr. Kleppin worked only 7 hours. In other words, Mr. Kleppin performed 7 of 125 hours, or 5.6% of the lawyer time. But for post-Report attorney time, the attorney responsibility suddenly changed—and Mr. Kleppin performed 28.6 of the 29.7 hours listed, for more than 96% of the total attorney time.

Other than using an attorney with a higher hourly billing rate in order to increase a fees award (which would not be a legitimate ground to obtain fees at the higher rate), there seems little reason for Mr. Kleppin to have been so heavily involved in the case at this late stage when he and his firm were previously content with using a younger associate with a lower billing rate.

■ Defendants, of course, are free to choose any qualified attorney to represent them. But "[w]hile [a party] is certainly free to choose whatever staffing arrangements it desires in litigating a case, when it seeks to visit the cost of that choice on its adversary, it is only entitled to reimbursement of *reasonable* costs." *Chem-*

---

**22.** Defendants sought **$37,500** in fees in its initial request, (DE # 79–3). The amount that this Court is recommending for an award on this first motion is significantly less than the demand (i.e., it is approximately 18% of the amount Defendants requested in their mo-

tion), but the Court must "exercise restraint in imposing such sanctions." *Dent,* 665 F.Supp.2d at 1297 (awarding fees against Plaintiff's counsel in FLSA lawsuit and noting that "the law does not require a full award and neither will this Court").

*ische Fabrik Budenheim KG v. Bavaria Corp. Int'l,* 2010 WL 98991, at *5, 2009 U.S. Dist. LEXIS 122133, at *7–8 (M.D.Fla. Jan. 6, 2010).

▮▮ It is well established that a fee applicant must exercise sound "billing judgment" and eliminate time entries that are excessive or unnecessary. *Simon v. Leaderscape LLC,* 565 F.Supp.2d 1332, 1336 (S.D.Fla.2008) ("a plaintiff must always attempt to litigate a matter in the **most efficient means possible**") (emphasis added). Using Mr. Kleppin to perform legal services which could have been (and should have been) performed by Mr. Zinchiak (who, after all, had performed the vast majority of the legal services before the initial Report issued) is hardly an efficient approach to staffing a case.

Therefore, all time entries which the Court concludes to be reasonable in the two supplements will be calculated with Mr. Zinchiak's lower rate (of $200 per hour). *See generally American Civil Liberties Union v. Barnes,* 168 F.3d 423, 428 (11th Cir.1999) ("courts are not authorized to be generous with the money of others" when calculating a fees award). The Court has individually reviewed each billing entry and all objections or responses in support and reaches the following conclusions.

As to the first supplement, the Undersigned concludes that it should have only reasonably taken Plaintiffs' counsel 4.9 hours to complete all of the listed work. Consequently, the Undersigned respectfully recommends that the District Court award Plaintiffs only an additional 4.9 hours at $200.00 per hour, for a total of $980.00 in fees for the first supplement.

The second supplement requires more analysis but the Undersigned also concludes that the requested time should be reduced, as well. For instance, Defendants are not entitled to fees for any time entries associated with the drafting of a "reply" in support of their objections to the initial Report, as there was no rule (effective at the time) authorizing the filing of a reply. Defendants cannot take comfort in the post-reply Amendments to the Local Rules, which went into effect many months after the time incurred in the then-unauthorized reply. The 3.3 hours incurred for the "reply" on August 4, 2011 are therefore not recoverable.

Defendants seek fees for 19 hours which Mr. Kleppin says he worked on July 14, July 18 and July 19, 2011. The entries are vague, however, and also appear excessive. It is difficult to see how an attorney could spend more than 8 hours (on July 14, 2011) to merely "review" objections to the initial report. The Court has similar concerns over the 8.8 hour entry for July 19, 2011. This seems like an inordinate amount of time for a senior lawyer to spend on "reviewing" a response. Consistent with these questions, a 2–hour entry on July 18, 2011 for "review" of "part" of a response to objections is also problematic, especially because it appears that this relates to additional review of the same document.

Because both parties filed objections to the initial Report and defense counsel's time entries for July 18 and 19 reference only review of a "response," the Court does not know with certainty whether these entries relate to Mr. Kleppin's review of his own response or of Plaintiffs' response. Either way, however, the time is unjustified. If Mr. Kleppin had been reviewing his own response, then 10.8 hours is illogical. On the other hand, if the 10.8 hours for reviewing "responses" concerns review of *Plaintiffs'* response, then much of the time is unnecessary because no reply to the response was permitted (and there would be no need to painstakingly review a memorandum to which no further submission could be filed).

Therefore, the Court will reduce the 19 hours to 2 hours and will not permit the 3.3–hour entry for drafting a reply. Consequently, the Undersigned respectfully recommends that the District Court award Plaintiffs only an additional 2.9 hours in fees at $200.00 per hour, for a total of $580.00 in fees, for the second supplement.

Defendants' third supplemental fees request should be denied in its entirety. As noted, this request is, in effect, buried in an 18–page reply memorandum. It is not verified, it does not attach time sheets and it does not even total the hours at issue.[23] Instead, it appears to be an afterthought, tacked on to a memorandum. Defendants simply list a series of cryptic descriptions of legal services performed on certain dates, without providing a total or any detail. Moreover, if the Court were to begin a substantive analysis of the listed time entries (which it is not going to do), the assessment would include the inefficient decision to file an 18–page reply to an 8–page response (DE # 114). This appears to be a classic illustration of overkill. But the procedural deficiencies are significant and are independently sufficient to warrant a recommendation that District Court should award none of the fees succinctly mentioned in the "third" supplemental fees request.

By way of summary, the fees award will be calculated as follows:

1. $6,780 for fees incurred in connection with the first motion.

2. $980.00 for fees listed in the first supplement (with all time at $200 per hour)

3. $580 for fees listed in the second supplement (with all time at $200 per hour).

No award for fees listed in the "third" supplement.

Thus, the total amount of fees awarded to Defendants (against Mr. Zidell, Mr. Kelly and J.H. Zidell, P.A.) is **$8,340.00**.

## IX. *Objections*

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(b), the parties have seven (7) days after being served with a copy of this Report and Recommendation to serve and file written objections, if any, with the District Court. Each party may file a response to the other party's objection within five (5) days of the objections and a reply may be filed within three (3) days of the response.[25] Failure to timely file objections shall bar the parties from a de novo determination by the District Court of an issue covered in this report and bar the parties from attacking on appeal the factual findings contained herein. *Resolution Trust Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir.1993) (citing *LoConte v. Dugger*, 847 F.2d 745, 749–50 (11th Cir.1988)).

---

**23.** Southern District of Florida Local 7.3(a)(7) provides that a motion for attorney's fees shall "be verified."

**25.** Local Magistrate Rule 4 (as amended, effective December 1, 2011) authorizes the filing of a reply and also authorizes either the magistrate judge or the district judge to modify the deadlines for objections, responses and replies. Given that the parties have already engaged in significant briefing of these issues in connection with the initial Report, the Court opted to shorten the deadlines.