[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**AUGUST 12, 2003**
**THOMAS  K. KAHN**
**CLERK**

_____

No. 02-10875

_____

D. C. Docket No. 96-03165 CV-PCH


NEWTON B. SCHWARTZ, SR.,
BENTON MUSSLEWHITE, SR.,

                                                    Plaintiffs-Appellants,


GEOVANNY ARAUZ JOZA, individually
and as Administrator and/or Personal
Representative of the Estate of Sicyaenn
Gregoria Burgos Mendoza, et al.,

                                                    Plaintiffs,


        versus


MILLON AIR, INC.,

                                                    Defendant-Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

**(August 12, 2003)**

Before EDMONDSON, Chief Judge, DUBINA, Circuit Judge, and HODGES[*], District Judge.

EDMONDSON, Chief Judge:

Appellants, Newton Schwartz, Sr. and Benton Musslewhite ("Appellants") appeal the district court's order imposing sanctions under 28 U.S.C. § 1927 and Fla. Stat. § 57.105.  We reverse the district court's award of sanctions.

## BACKGROUND

On 22 October 1996, a cargo plane owned and operated by Millon Air, a Florida corporation, crashed shortly after takeoff from Manta, Ecuador.  In addition to killing the crew of the airplane, the crash killed, on the ground, approximately 30 residents of Ecuador living in the neighborhood of the crash site; and the crash injured many others.  Following the plane crash, many Ecuadorian plaintiffs filed suit in state and federal courts in the United States for bodily injury, wrongful death, and property damage against Millon Air and against other defendants whom Plaintiffs claimed were responsible for the crash.[1]

---

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

[1] For convenience, we refer to these Defendants collectively as "Millon Air."

In April 1997, Appellants filed cases in the Southern District of Florida on behalf of Cecilia Guzman Cedeno, whose mother, Rita Patria Cedeno Vera, had died shortly after the crash, and on behalf of Luis Alberto Veliz Cevallos, a burn victim. Appellants received these cases (along with approximately 217 other claims resulting from the plane crash) from Richard Briones, a lawyer licensed to practice law in Ecuador.[2] Because Briones was located in Ecuador, Appellants relied upon Briones, as the referring attorney, to conduct the factual investigation into the claims. The files Appellants received from Briones included photographs and copies of their clients' medical records which were, for the most part, in Spanish.

Although Schwartz neither reads nor speaks Spanish, he -- as well as a staffer who was fluent in Spanish -- conducted a review of the files. In reviewing the photographs included in the files, Schwartz was struck by what appeared to be a remarkable recovery by Cevallos. Schwartz inquired of Briones whether the photographs were in fact of Cevallos. Briones assured Schwartz that the photographs were of Cevallos. Schwartz made no further investigation.

---

[2] The parties agree that Briones had died before the district court ruled upon the motion to dismiss.

In December 1997, Musslewhite and Briones met in Ecuador with Rodrigo Jijon, one of Millon Air's Ecuadorian attorneys, and with other Millon Air representatives to discuss settlement possibilities for the approximately 219 claims Musslewhite and Briones represented from the accident. Jijon indicated to Musslewhite that some of the cases might have been totally lacking merit in that some of the claimants might not have been positioned close enough to the crash to have been injured and that some who were in the vicinity may not have been injured as claimed. Jijon, however, did not indicate which cases he believed included false claims. The parties do not dispute that Appellants asked Jijon to work with the Appellants' investigator, Raphael Jaque, to identify which claims Jijon believed to be meritless; Jijon did not do so.

All of the cases – 33 cases -- filed in the Southern District of Florida relating to the Millon Air accident were consolidated, and later Millon Air moved to dismiss under the doctrine of forum non conveniens. The district court granted the motion, and Cedeno and Cevallos appealed.

In 1999, while the appeal was pending, Millon Air discovered that Cedeno and Cevallos's claims were fraudulent. Millon Air then moved in district court to dismiss the claims. Millon Air also sought attorneys' fees and costs, pursuant to 28 U.S.C. § 1927 and Fla. Stat. § 57.105. Millon Air asserted that it originally did

4

not investigate the claims because it had moved to dismiss for <u>forum</u> <u>non</u> <u>conveniens</u>. Millon Air stated that, when it investigated the claims to prepare for mediation, it discovered that the dates in the medical records of Cedeno and Cevallos had been altered to make it appear as though they had been victims of the plane crash. Cedeno actually had been admitted to the hospital two days before the crash, and Cevallos had received his burns more than a year before the crash.

Millon Air also filed a motion in this Court seeking to stay the appeal pending certification of the district court's inclination to grant Millon Air's motion to dismiss. We granted Millon Air's motion to stay the appeal.

Before the district court, Appellants responded to Millon Air's motion to dismiss and motion for sanctions.[3] Appellants did not oppose the motion to dismiss. Appellants noted that they did not question the authenticity of the evidence submitted by Millon Air. Appellants stated that they did not "countenance any fraud," and asserted that they had made reasonable inquiries into the claims before filing suit and had reasonably relied upon the investigation conducted by Briones, the Ecuadorian lawyer who had referred the case.

After the district court certified that it was inclined to grant the motion to dismiss, we remanded for consideration of Millon Air's motion to dismiss and the

---

[3] Appellants also petitioned this Court for leave to withdraw as counsel.

5

motion for attorneys' fees. We also granted Appellants' motion to withdraw as counsel.

On remand, the district court dismissed the case based on the newly discovered evidence of fraud. The district court imposed sanctions under 28 U.S.C. § 1927, determining that Plaintiffs' counsel failed to conduct a proper investigation before filing the complaints and missed later suggestions of meritlessness, and concluding that sanctions were warranted. The district court pointed out that Appellants had never spoken to their clients and that nothing indicated that counsel had conducted a pre-complaint investigation. The district court concluded that counsel's "complete reliance" on the investigators and referring attorney was unreasonable and a breach of the duty to investigate. The district court said that, although Schwartz had been troubled by the photographs of Cevallos's burns and Musslewhite had indications from opposing counsel that some of the claims might be based on faulty information, neither counsel acted on this information. The district court also determined that Millon Air was entitled to attorneys' fees and costs under Fla. Stat. § 57.105, which provides for attorneys' fees when the losing party presents a claim that the attorney knew or should have known was not supported by the material facts necessary to establish the claim.

Appellants filed a pro se motion for a new trial pursuant to Fed.R.Civ.P. 59 and 60 and requested an evidentiary hearing. In support of their motions, Appellants submitted the affidavits of Musslewhite and Robert Roberts, an attorney who assisted in putting Briones in contact with Musslewhite. The district court denied the motion to reconsider the previous order imposing sanctions. After an evidentiary hearing, the district court awarded Defendants $63,245.51 in attorneys' fees and costs.

DISCUSSION

28 U.S.C. § 1927

On appeal, Appellants argue that the district court erred by imposing sanctions upon them pursuant to 28 U.S.C. § 1927. Appellants assert that they reasonably relied upon information from Briones and others who investigated the case and that nothing evidences that they engaged in vexatious or unreasonable litigation.[4]

---

[4] While on appeal, Appellants moved to supplement the record to include exhibits from the case files of their former clients. These exhibits include photocopies of the altered medical records. We rarely supplement the record to include material that was not before the district court, but we have

7

We review the district court's imposition of sanctions under 28 U.S.C. § 1927 for an abuse of discretion. Peterson v. BMI Refractories, 124 F.3d 1386, 1390 (11th Cir. 1997).

Section 1927 provides: "Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case <u>unreasonably</u> <u>and</u> <u>vexatiously</u> may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927 (emphasis added).

The plain statutory language of section 1927 makes clear that this section is not a "catch-all" provision for sanctioning objectionable conduct by counsel. <u>Peterson</u>, 124 F.3d at 1396. To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable <u>and</u> vexatious conduct; this

---

the equitable power to do so if it is in the interests of justice. See CSX Transp., Inc. v. City of Garden City, 235 F.3d 1325, 1330 (2000). We decide on a case-by-case basis whether an appellate record should be supplemented. Even when the added material will not conclusively resolve an issue on appeal, we may allow supplementation in the aid of making an informed decision. See Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1555 (11th Cir. 1989).

We note that, in addition to photographs of the medical records, Millon Air also submitted photocopies of the medical records in support of their motion to dismiss. These photocopies, however, are not always clear. The medical records Appellants seek to include in the record, although not complete, are clearer copies. These additional records provide us with a better understanding of the information Appellants possessed at the time these cases were pending. Accordingly, we grant the motion to supplement the record.

8

conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct. McMahan v. Toto, 256 F.3d 1120, 1128 (11th Cir. 2001), amended on reh'g, 311 F.3d 1077 (11th Cir. 2002), cert. denied sub nom. Nemesis Veritas, L.P. v. Toto, 123 S.Ct. 2273 (2003). For sanctions under section 1927 to be appropriate, something more than a lack of merit is required. Id. at 1129. The statute was designed to sanction attorneys who "willfully abuse the judicial process by conduct tantamount to bad faith." Malautea v. Suzuki Motor Co., Ltd., 987 F.2d 1536, 1544 (11th Cir. 1993) (quoting Avirgan v. Hull, 932 F.2d 1572, 1582 (11th Cir.1991).

"Bad faith" is the touchstone. Section 1927 is not about mere negligence. See Shepherd v. Wellman, 313 F.3d 963, 969 (6th Cir. 2002); Zuk v. E. Pa. Psychiatric Inst. of the Med. Coll. of Pa., 103 F.3d 294, 297-98 (3d Cir. 1996); Baulch v. Johns, 70 F.3d 813, 817 (5th Cir. 1995). A determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims. Cf. Thomas v. Tenneco Packaging Co., Inc., 293 F.3d 1306, 1320 (11th Cir. 2002) (defining bad faith under the courts' inherent power to award sanctions).

The record fails to support that Appellants' conduct in this case was tantamount to bad faith to warrant sanctions under 28 U.S.C. § 1927. No one contends that Appellants were actually aware of the fraud in this case. Instead, the district court imposed sanctions based upon Appellants' failure to investigate more thoroughly their clients' claims.

This case involves special circumstances. It involves great distances across international borders. It also involves foreign languages and foreign cultures. And it involves medical records and a great many clients. Taking these uncommon circumstances into consideration, we cannot conclude that Appellants acted much (if at all) outside of the range of reasonable conduct by relying upon the representations of Briones, the duly licensed Ecuadorian counsel who referred the cases to them.

Briones was not obviously unworthy of belief. The record in no way reflects that Briones was improperly licensed, was under disciplinary action, or that some other good reason existed for Appellants to believe that Briones's information and professional assurances that the cases were valid were untrustworthy.[5] We cannot say that it was unreasonable -- to the point of willful

---

[5] We note that Millon Air itself relied upon Ecuadorian counsel to investigate the original medical records in this case. We in no way mean to indicate that this reliance is improper; instead, we accept it as a necessity. Millon Air's Ecuadorian counsel turned out to be more scrupulous than

abuse and bad faith -- for American counsel to rely upon others (especially other legal counsel) who were fluent in Spanish and familiar with local customs in Equador and who were on the spot to conduct the investigation. We want no hard-edged rule to come out of this appeal. We particularly do not want to create this rule: an American lawyer cannot represent a client who resides in a distant country unless the lawyer and the client -- before the suit is filed or early in the litigation -- meet face-to-face, even when the client is not an English speaker and even if a face-to-face meeting would involve a go-between, such as an interpreter. Such a rule would be a substantial bar to foreign nationals being able to litigate claims in American courts that the law says American courts have the authority to hear.

Upon review of the record, neither are we convinced that the alterations of the medical records were so blatant in the photocopies Appellants received from Ecuador as to put Appellants on notice that a forgery had occurred.[6] One of

---

Appellants' referring counsel, but just being duped is not sanctionable. We also note that the district court's sanction order is based on the affidavit of an Ecuadorean lawyer making representations of facts which the district court accepted as true. Again, we are not critical of the reliance. We merely observe that every party -- and even the district court -- in the United States was relying on Ecuadorean lawyers for local knowledge of the facts.

[6] The record also shows that when Schwartz was troubled by Cevallos's photos, as the district court recognized, Schwartz did double-check with Briones to confirm Cevallos's injuries. When opposing counsel told Musslewhite that some of the claims might be totally lacking in merit, the parties do not dispute that Musslewhite did ask opposing counsel to point out the specific questioned claims so they could be further investigated. These acts by Schwartz and Musslewhite cannot be described accurately as doing nothing in the face of hints of problems with the cases; the lawyers acted reasonably or close to reasonably in the circumstances.

11

Millon Air's Ecuadorian counsel, Dr. Luis Carlos Fernandez Gilbert, averred that he took photographs of the original medical records because the alterations were "much more evident in reviewing the original records than in photocopies of the records." Dr. Gilbert's photographs reflect that the forgeries were, at least in some cases, done in a different colored pen. But in the black-and-white photocopies of the medical records that were sent to Appellants by Briones -- the copies of the records seen by Appellants -- the forgeries are not nearly as evident. We agree (so do Appellants) that the forgeries are detectible, once one knows what to look for in the photocopied records that Briones sent. But that a reasonable person reviewing large numbers of photocopied medical records would not have noticed the alterations to the pertinent dates in these records is completely plausible. A person looking at these copies would not have to be indifferent to the truth to miss the alteration.

Because the evidence does not support that Appellants acted in bad faith -- vexatiously within the meaning of section 1927 -- by relying upon the representations of a foreign lawyer, we reverse the district court's imposition of sanctions under section 1927.

Fla. Stat. § 57.105

12

The district court also imposed sanctions under Fla. Stat. 57.105. Although Appellants argued in their initial brief to us that no sanctions were warranted, Appellants failed in their initial brief to mention section 57.105 specifically. Appellants, however, did make the general argument that, where a lawyer reasonably relies upon another lawyer, such conduct cannot warrant sanctions unless the other party proves that the lawyer to be sanctioned was on notice of something that must lead an objectively reasonable lawyer to believe that the investigating lawyer was unreliable.

We conclude that sanctions also are not warranted under section 57.105. Section 57.105, as it read in April 1997, when Appellants filed the complaints in this case, provided, in relevant part:

> The court shall award a reasonable attorney's fee to be paid to the prevailing party in equal amounts by the losing party and the losing party's attorney in any civil action in which the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the complaint or defense of the losing party; provided, however, that the losing party's attorney is not personally responsible if he or she has acted in good faith, based on the representations of his or her client.[7]

---

[7] Section 57.105 has been amended since the inception of this case. We apply the version of section 57.105 in effect at the time the complaints in this case were filed. See McMahan v. Toto, 256 F.3d 1120, 1129 (11th Cir. 2001).

13

Fla. Stat. § 57.105 (1996) (emphasis added). Again the touchstone is whether the lawyer acted in "good faith." And a good faith standard is not a simple negligence standard; good faith focuses on honesty, sincerity, and a lack of recklessness. "The purpose of section 57.105 is to discourage baseless claims, stonewall defenses and sham appeals in civil litigation by placing a price tag through attorney's fees awards on losing parties who engage in these activities." Vasquez v. Provincial S., Inc., 795 So.2d 216, 218 (Fla. Dist. Ct. App. 2001) (internal quotations omitted) (quoting Whitten v. Progressive Cas. Ins. Co., 410 So.2d 501, 505 (Fla. 1982)).

No one contends that Appellants knew of fraud. And the evidence will not support a finding of recklessness (by which we, throughout this opinion, mean a gross deviation from conduct that might be reasonable in the circumstances). Given the special circumstances, Appellants reasonably (or something close to it) relied upon the representations of Briones, the Ecuadorean clients' spokesman and representative as well as the referring attorney in this case. See Fla. Dep't of Revenue v. Hannah, 745 So.2d 1055, 1056-57 (Fla. Dist. Ct. App. 1999) (concluding that, under the circumstances of the case, it was not unreasonable for the Department of Revenue to rely upon the grandmother's statement regarding paternity of the child); see also Snow v. Rosse, 455 So.2d 615, 617 (Fla. Dist. Ct.

14

App. 1984) (concluding that no attorneys' fees under section 57.105 were warranted where proof of fabrication by mortgagee was not overwhelming, and the record did not reflect recklessness and gullibility on the part of the mortgagee's attorneys). As Appellants understood the facts, the pertinent cases were not without arguable merit. Because Appellants acted in good faith based upon the representations of Briones, sanctions were not warranted under Fla. Stat. 57.105.

CONCLUSION

In hindsight, Appellants possibly could have done more and better. But that hindsight observation is almost always true. Given the unusual, international circumstances of this case (which distinguishes this case from those cited by the district court and the cases cited to us by Appellees), the record will not support a finding of true bad faith within the scope of the pertinent statutes. For the reasons stated above, we reverse the district court's imposition of monetary sanctions under 28 U.S.C. § 1927 and Fla. Stat. § 57.105.[8]

REVERSED.

_____

[8] Because we conclude that Appellants' conduct does not warrant sanctions, we do not decide whether (1) the district court erred by not considering Millon Air's culpability in failing to discover the fraud earlier, (2) the district court erred by not holding an evidentiary hearing, and (3) the amount of sanctions imposed was excessive.

No sanction imposed in this case was based on Fed.R.Civ.P. 11(c).

15