[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-12742
Non-Argument Calendar

_____

D.C. Docket No. 1:15-cv-03563-SCJ

BRANDON L. COLEMAN,

                                                            Plaintiff-Appellant,

versus

OASIS OUTSOURCING, INC.,

                                                            Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 8, 2019)

Before TJOFLAT, JORDAN and BLACK, Circuit Judges.

PER CURIAM:

Brandon Coleman appeals the district court's award of sanctions and grant of summary judgment to Oasis Outsourcing, Inc. (Oasis). Coleman asserts the district court abused its discretion when it determined Coleman's failure to dismiss his Worker Adjustment and Retraining Notification (WARN) Act claims in response to Oasis's request was sanctionable conduct under 28 U.S.C. § 1927. Coleman also contends the district court erred in holding (1) there was no enforceable contractual duty for Oasis, a Professional Employer Organization (PEO), to pay wages to Coleman; (2) a PEO does not have to give reasonable notice of termination to employees under Georgia law and that Oasis's termination notice given 18 days after the purported termination was reasonable; and (3) Oasis received no benefit from Coleman working 18 days after Oasis purported to terminate Coleman but before Oasis notified Coleman of his termination. After review, we affirm the district court.

## I.  BACKGROUND

This action arises out of the shutdown of numerous restaurants in the Atlanta area associated with Here to Serve Restaurants, Inc. and H2S Holdings, LLC (H2S). H2S employed Oasis, a third-party PEO, for payroll and other human-resources services.

A. *Service Agreement*

Oasis and H2S entered into a "Service Agreement" (Agreement) on March 24, 2011. The Agreement defined the relationship between Oasis, H2S, and the "leased employees" as "co-employment." H2S had "exclusive control over the day-to-day job duties of all leased employees," while Oasis had responsibility "for the payment of wages to the leased employees without regard to" whether H2S paid Oasis. If H2S failed to pay Oasis, however, Oasis's pay obligations required only minimum wage.

One section of the Agreement detailed the "Effect of Termination" of the Agreement. "If for any reason" H2S failed to pay Oasis as agreed, Oasis had "the right to immediately terminate its performance" under the Agreement. "Upon termination of [the] Agreement, or should [H2S] fail to timely pay [Oasis] for its services, all of the employees shall be deemed to have been laid off by [Oasis] and immediate notification of this shall be provided by [H2S] to employees who had been leased pursuant to [the] Agreement."

H2S assumed "all federal, state and local obligations of an employer to the employees" in the event of the Agreement's termination. Oasis, on the other hand, was immediately "released from such obligations as are permitted by law." The parties intended "that, where allowed by law, they be placed in their respective

3

positions immediately before their entry into this Agreement in the event of a termination or expiration or [H2S's] failure to pay [Oasis]."

The Agreement stated that "[n]o rights of any third party are created by this Agreement and no person not a party to this Agreement may rely on any aspect of this Agreement." It also provided that Oasis "will notify all leased employees of this Agreement at inception and termination or expiration of Agreement[, and H2S] shall also immediately upon termination or expiration of this Agreement notify all employees of the termination or expiration of this Agreement."

B. *Employee Acknowledgements*

When H2S hired employees, they signed "Employee Authorizations & Acknowledgements." This form outlined the relationship between Oasis and its employees. The form Coleman signed acknowledged, "there is no contract of employment which exists between me and Oasis."

C. *Termination of Service Agreement*

H2S began falling behind on its contractually required payments to Oasis in July 2015. Although grounds for termination, Oasis chose to continue paying workers, and by the end of August 2015, "H2S owed Oasis approximately $1 million" for services rendered under the Agreement.

Via letter dated September 3, 2015, Oasis terminated the Agreement effective August 30, 2015, with the last paychecks dated September 4, 2015. Oasis

4

requested that H2S advise its "employees of the discontinuance of Oasis'[s] services." H2S did not do so.

After the termination letter issued, H2S and Oasis continued to discuss reinstating Oasis's services. These discussions resulted in reinstatement for the August 30 to September 13, 2015 pay period, with the Agreement to terminate on September 13. After that date, Oasis never reinstated the Agreement, and H2S never told its workers that Oasis terminated the Agreement.

Oasis and H2S continued to discuss reinstatement after September 13, 2015, and H2S eventually sent Oasis $295,000 "in the second half of September" 2015, which brought the balance it owed to approximately $765,000. On September 30, 2015, Oasis sent H2S a letter "agreeing to provide services" under the Agreement "for the payroll period September 14, 2015 to September 27, 2015 (subject to receipt of prepayment in full and all other required performance)."

The reinstatement discussions fell apart by October 2, 2015, however. That same day, Oasis mailed letters to all H2S workers (Oasis's co-employees) that the Agreement terminated effective September 13, 2015. The letter also advised that the workers were "no longer covered by Oasis'[s] . . . worker's compensation" and that H2S was "responsible for any pay due . . . for any work performed for them after" the termination date.

5

H2S paid the workers their wages for the pay period ending September 27, 2015. On October 5, 2015, H2S, without warning to its workers, closed all of its restaurants and fired all of its workers. Coleman and other workers never received pay for the September 28 to October 5, 2015 pay period.

## II. DISCUSSION

A. *Whether the district court abused its discretion in sanctioning Coleman*

The original complaint for violations of the Fair Labor Standards Act (FLSA), breach of contract, and violation of the WARN Act was filed on October 7, 2015, against H2S, Thomas and Leigh Catherall, and Oasis. A First Amended Complaint was filed on October 19, 2015, alleging the same claims. On October 28, 2015, counsel for Oasis sent a letter to counsel for Coleman, asking Coleman to voluntarily dismiss his WARN Act claims against Oasis. The letter stated that Coleman failed to allege that Oasis ordered the closing of the restaurants and cited case law where courts have rejected WARN Act claims for similar flaws. Oasis warned Coleman's counsel that it would potentially seek sanctions if the WARN Act claim against Oasis were not dismissed. Coleman did not dismiss the claim and Oasis filed a motion to dismiss on November 25, 2015, citing the same flaws pointed out in the letter to Coleman's counsel. In response, Coleman did not defend the claim, but rather filed notice that he would amend his Complaint, deleting the WARN Act claim against Oasis.

6

Oasis then filed a Motion for Sanctions under 28 U.S.C. § 1927, which Coleman opposed. The district court granted the motion, finding that Coleman's counsel "engaged in conduct that was 'unreasonable and vexatious.' The conduct did multiply the proceedings because it forced [Oasis] to file a motion to dismiss and a subsequent motion for sanctions." As sanctions, the district court ordered Coleman's counsel to pay Oasis's attorney's fees for filing the motions to dismiss and for sanctions. Coleman sought reconsideration, which was denied. The district court awarded Oasis $7,716 of attorney's fees expended in the filing of the motions to dismiss and for sanctions, which was less than the $12,153 requested by Oasis.

"Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. "To justify an award of sanctions pursuant to section 1927, an attorney must engage in unreasonable *and* vexatious conduct; this conduct must multiply the proceedings; and the amount of the sanction cannot exceed the costs occasioned by the objectionable conduct." *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003). Bad faith is the touchstone by which conduct is measured. *Id.* Mere negligence is not enough—an attorney must knowingly or recklessly pursue a frivolous claim or engage in tactics that

7

needlessly obstruct the litigation of non-frivolous claims to warrant a bad-faith finding. *Id.* Bad faith is measured objectively, such that a "court may impose sanctions for egregious conduct by an attorney even if the attorney acted without the specific purpose or intent to multiply the proceedings." *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230, 1241 (11th Cir. 2007).

The district court did not abuse its discretion in finding that Coleman's counsel pursued a frivolous claim that obstructed the litigation of the remaining claims and required Oasis to expend resources to file the motion to dismiss and motion for sanctions. *Schwartz*, 341 F.3d at 1225 (reviewing for abuse of discretion a district court's imposition of sanctions under 28 U.S.C. § 1927). Coleman's counsel was warned about the defects in his WARN Act claim and did not withdraw it. Oasis was then forced to file a motion to dismiss citing the same defects, and Coleman then withdrew the claim. It was not an abuse of discretion for the district judge to award sanctions in the amount of attorney's fees of the $7,716 expended in filing the motions to dismiss and for sanctions.

B. *Whether the district court erred in granting summary judgment to Oasis*

We review the district court's grant of summary judgment *de novo*. *Keener v. Convergys Corp.*, 312 F.3d 1236, 1239 (11th Cir. 2002).

8

### 1. *Oasis did not breach any contractual duty to Coleman to pay wages*

The district court did not err in determining that Oasis had no contractual duty to pay wages to Coleman after Oasis terminated its contracts with H2S. The district court agreed with Coleman's arguments that PEOs qualify as employers under Georgia law, O.C.G.A. § 34-7-6(d), and that at-will employees can recover under a breach of contract theory in certain circumstances, *see Walker Elec. Co. v. Byrd*, 635 S.E.2d 819, 820 (Ga. Ct. App. 2006). However, the Employee Authorizations & Acknowledgements signed by Coleman expressly disclaimed that any contract with Oasis existed. Any potential employment relationship that Oasis had with Coleman ended on September 13, 2015, when the Agreement between Oasis and H2S was terminated, and Oasis was no longer the PEO for H2S and Coleman. There is no dispute that Coleman was paid for his service through the time Oasis terminated its contract with H2S.

### 2. *Oasis provided reasonable notice of termination*

The district court did not err in concluding that, even if Oasis was required to provide notice of termination, Oasis provided notice by October 5, 2015, once it became clear the contract with H2S would not be reinstated. Oasis's notice on October 5, 2015 did not breach any duty Oasis had to Coleman, as it notified Coleman of termination once it became clear that the contract with H2S would not be reinstated.

*3. Oasis was not unjustly enriched*

> A claim of unjust enrichment will lie if there is no legal contract and the party sought to be charged has been conferred a benefit by the party contending an unjust enrichment which the benefited party equitably ought to return or compensate for. The concept of unjust enrichment in law is premised upon the principle that a party cannot induce, accept, or encourage another to furnish or render something of value to such party and avoid payment for the value received.

*Campbell v. Ailion*, 790 S.E.2d 68, 73 (Ga. Ct. App. 2016) (quotations omitted).

Coleman's argument is that he enriched Oasis by continuing to perform services past September 13, 2015. H2S paid Oasis over $295,000 in the latter half of September, and Oasis accepted and retained the benefit of the $295,000 while knowing that Coleman and others continued to work.

However, as the district court pointed out, Coleman does not dispute that H2S owed Oasis over $1,000,000 when it made the $295,000 payment, nor does he dispute that H2S continues to owe Oasis over $750,000. The district court did not err in determining that Oasis was not unjustly enriched, as (1) Oasis was also not paid what was due by H2S, and (2) Coleman never explains how he performed services for Oasis, rather than H2S, after September 13, 2015.

## III. CONCLUSION

We agree with the district court's observation that "[a]ll of the workers at [H2S] restaurants who worked from September 28 to October 5, 2015 without pay deserve compensation for their time. But Oasis is not the proper payor." The

10

district court did not abuse its discretion in awarding sanctions to Oasis, and it did

not err in granting summary judgment in Oasis's favor.

**AFFIRMED.**