[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11854
Non-Argument Calendar

_____

D.C. Docket No. 1:16-cv-23187-FAM

MAURICIO LACAYO, HILDA E. LACAYO,

                                        Plaintiffs - Appellants,

versus

PUERTA DE PALMAS CONDOMINIUM ASSOCIATION INC.,
DENNIS FAGET,

                                        Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 8, 2021)

Before JILL PRYOR, BRANCH and LUCK, Circuit Judges.

PER CURIAM:

Attorney Alfonso Oviedo-Reyes appeals the district court's order directing him to pay defendants Puerta de Palmas Condominium Association, Inc., and Dennis Faget a total of $14,496 as a sanction. In addition, his clients, plaintiffs Mauricio Lacayo and Hilda Lacayo, appeal the district court's order denying their motion for sanctions. After careful review, we affirm the district court.

## I.    BACKGROUND[1]

The Lacayos rented a condominium unit at the Puerta de Palmas condominium complex in Coral Gables, Florida. When the owner of the unit defaulted on her mortgage, Wells Fargo, acting as trustee for the owner of the mortgage, initiated foreclosure proceedings in state court and later purchased the unit at a foreclosure sale. Wells Fargo then brought two unlawful detainer actions in state court against the Lacayos, seeking to remove them from the unit.

The Lacayos, acting through their attorney Oviedo-Reyes, filed this action in federal court against Wells Fargo; the attorney and law firm who represented Wells Fargo in the state court unlawful detainer actions; other entities related to Wells Fargo; the association, which manages common areas in the condominium complex and provides amenities to owners and tenants; and Faget, the property manager for the association. The Lacayos brought claims under federal and state

---

[1] Because we write for the parties, we assume their familiarity with the record and set out only what is necessary to explain our decision.

2

law, alleging, among other things, that each defendant had improperly attempted to collect debts from the Lacayos in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* The district court dismissed the case with prejudice, concluding that the Lacayos filed an improper shotgun pleading and failed to state a claim for relief under the FDCPA.

After the district court dismissed the case, the association and Faget filed a motion for attorney's fees, asking the district court to impose sanctions and order the Lacayos and Oviedo-Reyes to pay the attorney's fees they incurred in the federal litigation. The Lacayos responded with their own motion seeking sanctions against the association and Faget's counsel, asserting that the association and Faget's motion for attorney's fees was frivolous and filed in bad faith.

In a single order, the district court granted the association and Faget's motion for attorney's fees and denied the Lacayos' motion for sanctions. The district court found that Oviedo-Reyes had engaged in "unreasonable [and] vexatious" conduct that "led to multiplied proceedings" and ordered him to pay the association and Faget a total of $14,496 in attorney's fees. Doc. 176 at 8.[2] The court denied the Lacayos' motion as "without any legal basis." *Id.* at 9. This appeal is from the district court's order.

---

[2] "Doc." numbers refer to the district court's docket entries.

3

## II.    JURISDICTION

We begin with a threshold question:  whether we have jurisdiction over Oviedo-Reyes's appeal of the sanctions the district court ordered against him.  *See Holloman v. Mail-Well Corp.*, 443 F.3d 832, 844 (11th Cir. 2006) ("We must consider questions concerning our appellate jurisdiction on our own motion even if neither party has raised the issue.").  A civil litigant who appeals as of right generally must file a notice of appeal within 30 days of the entry of the judgment or order appealed from.  *See* Fed. R. App. P. 4(a)(1)(A).  "[A] timely and properly filed notice of appeal is a mandatory prerequisite to appellate jurisdiction." *Holloman*, 443 F.3d at 844.

Federal Rule of Appellate Procedure 3(c)(1) sets out three requirements for a notice of appeal:  it must "specify the party or parties taking the appeal by naming each one in the caption or body of the notice," "designate the judgment, order, or part thereof being appealed," and "name the court to which the appeal is taken." But an appeal will not be dismissed "for failure to name a party whose intent to appeal is otherwise clear from the notice."  Fed. R. App. P. 3(c)(4).  We have jurisdiction to hear an appeal from a party who was not listed on the notice of appeal when it is "objectively clear" that the party intended to appeal.  *Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs*, 162 F.3d 653, 660 (11th Cir. 1998) (quoting Fed. R. App. P. 3(c) advisory committee's note to 1993 amendment).

4

In this appeal, Oviedo-Reyes seeks to challenge the district court's order sanctioning him. Although neither the caption nor the body of the notice of appeal identified Oviedo-Reyes as a party to the appeal, it is objectively clear from the notice that Oviedo-Reyes intended to appeal.[3] The notice of appeal identified as the order being appealed the order imposing sanctions against Oviedo-Reyes personally. We therefore have jurisdiction to decide Oviedo-Reyes's appeal.[4]

### III.    STANDARD OF REVIEW

We review for abuse of discretion a district court's order granting or denying sanctions. *See Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1237 (11th Cir. 2007). "We give great deference to a district court's interpretation of its local rules" and review for abuse of discretion a district court's application of its local rules. *Reese v. Herbert*, 527 F.3d 1253, 1267 n.22 (11th Cir. 2008) (alteration adopted) (internal quotation marks omitted).

---

[3] The notice of appeal identified the Lacayos as the parties who were appealing. But they lack standing to appeal the district court's award of sanctions. The Lacayos were not aggrieved by the sanction imposed only against their attorney, not them. *See Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1354 (11th Cir. 2003) (explaining that a party to a lawsuit lacks "standing to appeal . . . trial court rulings that do not affect their interests.").

[4] The fact that the notice of appeal expressly identified the order imposing sanctions as the order being appealed distinguishes this case from our earlier decision in *Holloman*. There, we dismissed an attorney's appeal from a district court order sanctioning him personally when the notice of appeal stated that the plaintiffs (not their lawyer) were appealing and identified the district court's final judgment (not the order that imposed sanctions) as the judgment or order being appealed. *See Holloman*, 443 F.3d at 845.

## IV.  ANALYSIS

There are two issues before us on appeal:  (1) did the district court abuse its discretion when it ordered Oviedo-Reyes to pay the association and Faget their attorney's fees as a sanction, and (2) did the district abuse its discretion when it denied the Lacayos' motion for sanctions?  We see no abuse of discretion with respect to either issue.

**A.  The District Court Did Not Abuse Its Discretion in Ordering Oviedo-Reyes to Pay the Association and Faget's Attorney's Fees.**

We first review the district court's decision to order Oviedo-Reyes to pay the association and Faget's attorney's fees.  Oviedo-Reyes argues that the district court erred in awarding attorney's fees because the association and Faget were not "Prevailing Part[ies]" in the underlying litigation.  Appellants' Br. at 9.  Oviedo-Reyes assumes that the district court could award the association and Faget their attorney's fees only if they were prevailing parties in the underlying litigation.  But, as we explain below, the statute under which the district court imposed sanctions—28 U.S.C. § 1927—contains no such requirement.  What's more, there is ample support in the record for the district court's determination that sanctions were warranted under § 1927 because Oviedo-Reyes engaged in vexatious and unreasonable conduct throughout the litigation that multiplied the proceedings.

6

Section 1927 authorizes a district court to impose sanctions against an attorney who unreasonably and vexatiously multiplies the proceedings.  The statute states:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.  There are "three essential requirements" for a district court to impose sanctions under § 1927:  (1) the attorney must have engaged in unreasonable and vexatious conduct; (2) this conduct must have multiplied the proceedings; and (3) the dollar amount of the sanctions must bear a financial nexus to the excess proceedings in that it may not exceed the costs, expenses, or attorney's fees incurred because of the conduct.  *Amlong & Amlong*, 500 F.3d at 1239.  For a sanctions award to be appropriate, "something more than a lack of merit is required" because § 1927 "was designed to sanction attorneys who willfully abuse the judicial process by conduct tantamount to bad faith."  *Schwartz v. Million Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003) (internal quotation marks omitted).  An attorney acts in bad faith for purposes of § 1927 when he "knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims."  *Id.*

Although Oviedo-Reyes argues that a court can award sanctions under § 1927 only to a party who prevailed in the underlying litigation, he cites no authority adopting such a requirement. In fact, the Supreme Court has rejected the argument that any such requirement exists under § 1927. *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 762 (1980).

In *Roadway Express*, the Court considered what sanctions a district court could impose on "lawyers who unreasonably extend court proceedings." *Id.* at 757. The Court contrasted § 1927, which contains no requirement that a party must prevail in the underlying litigation to be entitled to a sanctions award, with the fee provisions for two civil rights statutes, which permit a court to award costs or attorney's fees to a prevailing party only. *See id.* at 761–62 (citing 42 U.S.C. §§ 1988, 2000e-5(k)).[5] As the Court explained, "[section] 1927 does not distinguish between winners and losers, or between plaintiffs and defendants. The statute is indifferent to the equities of a dispute and to the values advanced by the substantive law. It is concerned only with limiting the abuse of court processes." *Id.* at 762. Because § 1927 contains no prevailing-party requirement, we reject

---

[5] At the time *Roadway Express* was decided, § 1927 permitted a party to recover only "costs," not attorney's fees or other expenses, from opposing counsel who unreasonably and vexatiously multiplied proceedings. *See Roadway Express*, 447 U.S. at 756 n.3. Congress later amended § 1927 to permit the recovery of attorney's fees and other expenses as well. *See* Pub. L. No. 96-349 § 3, 94 Stat. 1154, 1156 (1980). When Congress amended § 1927, it did not limit the availability of sanctions under § 1927 to prevailing parties. *See id.*

Oviedo-Reyes's argument that the district court could award the association and

Faget sanctions only if they were prevailing parties in the underlying litigation.[6]

The narrow question before us, then, is whether the district court abused its

discretion when it concluded that sanctions were warranted under § 1927 because

Oviedo-Reyes engaged in vexatious and unreasonable conduct that multiplied the

proceedings. The record amply supports the district court's conclusion.

Oviedo-Reyes's vexatious and unreasonable conduct included failing to

follow the court's directions, most notably when he filed a second amended

complaint that was a shotgun pleading. After Oviedo-Reyes filed a 45-page

amended complaint, which set forth at least 15 causes of action against eight

---

[6] Even if § 1927 authorized a district court to award costs, expenses, and attorney's fees only to a prevailing party, our conclusion would not change. The association and Faget prevailed in the underlying litigation when they secured a dismissal with prejudice of the Lacayos' federal claims. Troublingly, Oviedo-Reyes refuses to acknowledge this fact.

In arguing that the association and Faget were not prevailing parties, Oviedo-Reyes focuses on the fact that at an earlier stage in the litigation the district court erroneously dismissed the Lacayos' claims against all the defendants and our Court reversed that order on appeal. In its first dismissal order, the district court found that the action was barred by the *Rooker-Feldman* doctrine because the Lacayos were improperly using this federal lawsuit to attack the state court judgment in the foreclosure action. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). We reversed the district court, concluding that the *Rooker-Feldman* doctrine was inapplicable because the Lacayos had not been parties to the state-court foreclosure action. The fact that the Lacayos secured an intermediate victory does not change the fact that the association and Faget ultimately prevailed in the litigation. We also note that there is no question before us about whether the association and Faget could recover attorney's fees for work relating to the district court's first dismissal order or the appeal of that order because the district court did not award any fees for work performed during that portion of the case.

named defendants, the magistrate judge issued a recommendation that the amended complaint be dismissed as an improper shotgun pleading.

In the recommendation, the magistrate judge identified several deficiencies in the complaint that made it a shotgun pleading. Because the amended complaint defined the term "DEFENDANT" to refer to the named defendant and all other defendants as well, the magistrate judge explained, the "collective definition" made it "impossible to discern which allegations apply to which named Defendants." Doc. 125 at 22. In addition, the magistrate judge determined that the amended complaint improperly set forth "seemingly disconnected facts and allegations with legal conclusions interspersed." *Id.* at 21. And the magistrate judge noted that the numbering of paragraphs in the amended complaint "reset[] illogically," making it impossible to cite to a paragraph by number. *Id.*

After receiving the magistrate judge's recommendation, Oviedo-Reyes filed a second amended complaint. Rather than following the magistrate judge's instructions and fixing the deficiencies, Oviedo-Reyes submitted a second amended complaint that was yet another shotgun pleading. It combined state and federal claims within individual counts, sometimes including multiple causes of action against multiple defendants in a single count. It defined the term "Defendant" to refer to all defendants, making it impossible to determine which allegations applied to which defendants. And it made seemingly disconnected

allegations with legal conclusions interspersed and lacked consecutively-numbered paragraphs.[7]

Oviedo-Reyes's vexatious and unreasonable conduct—filing a second amended complaint that was a shotgun pleading without remedying the deficiencies that the magistrate judge identified in the amended complaint—multiplied the proceedings. Faget and the association were forced to respond to the second amended complaint by filing a new motion to dismiss. And the district court then had to rule on that motion, explaining why the second amended complaint was yet another "archetypal shotgun pleading." Doc. 160 at 1.

We agree with the district court that Oviedo-Reyes also engaged in other conduct that was vexatious and unreasonable and multiplied the proceedings. Even after the magistrate judge explained the requirements to state a claim under the FDCPA, Oviedo-Reyes included in the second amended complaint baseless FDCPA claims against the association and Faget. As the district court explained, "[w]ith notice of the law, a reasonable attorney would have dropped meritless claims and not persisted in litigation." Doc. 176 at 9. Also, Oviedo-Reyes requested at least three times that the clerk's office enter a default against the

---

[7] The district court identified other problems with the second amended complaint, including that it had "interspersed large blocks of text in bold, capital letters, or both, in the center of the pages" and "[q]uotation marks appeared randomly and without meaningful citation to another source." Doc. 176 at 7. Similar problems plague the briefs Oviedo-Reyes filed with this Court.

11

defendants, including the association and Faget, even though they had timely filed responsive pleadings and thus could not have been in default.  And, the district court found, the motion for sanctions Oviedo-Reyes filed against the association, Faget, and their attorneys lacked any legal basis.  Given the evidence of Oviedo-Reyes's unreasonable and vexatious conduct that multiplied the proceedings, the district court acted well within its discretion in imposing sanctions against him.

Oviedo-Reyes nevertheless argues that the district court erred in awarding sanctions because the association and Faget committed "perjury" in their motion for attorney's fees that misled the court.  Appellant's Br. at 12 (emphasis omitted).  Yet Oviedo-Reyes has identified no false statement in the motion or brief.  Instead, his argument seems to be that because, in his view, the motion for sanctions was unwarranted, opposing counsel must have made a false statement that misled the court.  Oviedo-Reyes's accusation of perjury is utterly inappropriate and his argument has no merit.  As we explained above, there is ample evidence in the record to support the district court's conclusion that Oviedo-Reyes engaged in unreasonable and vexatious conduct that multiplied the proceedings.

Oviedo-Reyes also argues that the district court erred in awarding attorney's fees to the association and Faget under § 1927 because they never made a request for fees under this statute.  According to Oviedo-Reyes, the association and Faget's motion for attorney's fees was "very specific" in seeking relief only under "Federal

12

Rule 54(d) and Local Rule 7.3," and they did not "[m]ov[e] the Court pursuant to 28 U.S.C. [§] 1927." Reply Br. at 10. Oviedo-Reyes's assertion is false; the association and Faget plainly requested relief under § 1927. *See* Doc. 165 at 4 (requesting that the association and Faget "be awarded attorneys' fees . . . pursuant to 28 U.S.C. § 1927").[8]

Oviedo-Reyes's final argument is that the district court erred in awarding the association and Faget their attorney's fees because they failed to comply with the district court's local rules governing the filing of motions for attorney's fees. Under the district court's local rules, a party who intends to file a motion for attorney's fees generally must serve opposing counsel with a draft of the motion and confer before filing the motion with the court. *See* S.D. Fla. L. R. 7.3(a), (b). Oviedo-Reyes argues that the association and Faget's attorney failed to comply with this rule. But Oviedo-Reyes concedes that opposing counsel emailed him a copy of the draft motion and that an attorney from the law firm representing the association and Faget conferred with him. We reject as baseless Oviedo-Reyes's argument. To the extent he argues that opposing counsel failed to comply with the

---

[8] For the first time in his reply brief, Oviedo-Reyes argues that it was improper for the district court to award attorney's fees under § 1927 because the court held no hearing and made no finding that the dollar amount of sanctions awarded did not exceed the costs, expenses, or attorney's fees incurred because of the conduct. But "we do not address arguments raised for the first time in a . . . reply brief." *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008). Oviedo-Reyes thus has abandoned this argument.

13

local rule in other ways, we find no abuse of discretion in the district court's

interpretation of the rule.  *See Reese*, 527 F.3d at 1267 n.22 (explaining that we

give "great deference" to a district court's interpretation of its own local rules

(internal quotation marks omitted)).

## B.    The District Court Did Not Abuse Its Discretion in Denying the Lacayos' Motion for Sanctions.

We now turn to the Lacayos' appeal of the district court's order denying

their motion for sanctions.  In the district court, the Lacayos sought sanctions on

the grounds that the association and Faget's motion for attorney's fees was

frivolous.  In light of our conclusion that the record supported the district court's

decision to grant the motion for attorney's fees, the district court did not abuse its

discretion in denying the Lacayos' sanctions motion.[9]

## V.    CONCLUSION

For the reasons set forth above, we affirm the district court.

**AFFIRMED.**

---

[9] In their opening brief, the Lacayos purported to raise other arguments in support of their motion for sanctions by asking us to look at the motion for other "reasons why Appellees' [sic] must be sanctioned for their misbehavior." Appellants' Br. at 16.  But we do not permit appellants to raise arguments on appeal by incorporating by reference arguments made to the district court. *Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A.*, 377 F.3d 1164, 1167 n.4 (11th Cir. 2004).  We decline to review any argument not raised in the appellants' brief.

14