**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 25-10089
Non-Argument Calendar
_____

NATIONAL CHRISTMAS PRODUCTS, INC,
  a New Jersey Corporation,
  d.b.a. National Tree Company,

*Plaintiff-Counter Defendant-Appellee,*

*versus*

OJ COMMERCE, LLC,
  a Florida Limited Liability Company,

*Defendant-Counter Claimant-Appellant.*

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:22-cv-60897-WPD

_____

Before LUCK, LAGOA, and KIDD, Circuit Judges.

PER CURIAM:

Proceeding under the assumption that it was an S-Corporation, National Christmas Products, Inc. filed suit against OJ Commerce, LLC, invoking the federal court's diversity of citizenship jurisdiction. But after two years of litigation, National Christmas discovered that its corporate-structure allegations were incorrect, which destroyed diversity. As such, the district court dismissed the case for lack of jurisdiction. OJ Commerce then moved for sanctions, but the district court denied this request because it could not ascertain any bad faith on the part of National Christmas or its counsel. OJ Commerce appeals this decision. After careful review, we find no abuse of discretion in this determination and affirm the decision to deny sanctions.

## I. BACKGROUND

In May 2022, National Christmas Products, Inc., doing business as National Tree Company ("National Christmas"), filed suit against OJ Commerce, LLC ("OJ Commerce") seeking damages for (1) breach of contract, (2) account stated, and (3) goods sold and delivered. National Christmas asserted that federal jurisdiction was proper because the parties were citizens of different states and the amount in controversy exceeded $75,000.

Due to deficiencies in the initial citizenship allegations, the district court sua sponte directed National Christmas to file an addendum "listing the citizenship of every member of any [p]arty that is a limited liability company or any other form of unincorporated business or association." National Christmas complied, and its addendum provided that OJ Commerce was an LLC with its sole

member being a Florida citizen and that National Christmas was an S-Corporation incorporated in, and with its principal place of business in, New Jersey.

"[A] corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." *Sweet Pea Marine, Ltd. v. APJ Marine, Inc.*, 411 F.3d 1242, 1247 (11th Cir. 2005) (quoting 28 U.S.C. § 1332(c)(1)). An LLC is a "citizen of any state of which a member of the company is a citizen." *Rolling Greens MHP, L.P. v. Comcast SCH Holdings L.L.C.*, 374 F.3d 1020, 1022 (11th Cir. 2004). As such, OJ Commerce was treated as a citizen of Florida and National Christmas was treated as a citizen of New Jersey. With federal subject matter jurisdiction apparently satisfied, the parties proceeded with the case.

In January 2024, following the close of discovery and just prior to the deadline for filing pretrial motions, National Christmas moved to dismiss the case in its entirety for lack of subject matter jurisdiction. The motion explained that National Christmas's Chief Financial Officer ("CFO") had informed counsel two months prior that the company was not an S-Corporation because it had "merged out of existence and into National Christmas Products LLC" in November 2019. After additional investigation, counsel determined that a member of one of the many LLCs involved in National Christmas's complicated ownership structure was a citizen of Florida, thereby destroying diversity jurisdiction.

OJ Commerce requested "expedited discovery on subject matter jurisdiction," alleging that National Christmas had committed fraud on the court by intentionally concealing its true corporate structure. In relevant part, it wished to "determine what exactly [National Christmas] and its counsel knew" and when it was aware of such information, including the "details of any investigations they did (or didn't do) in response to the" district court's May 2022 order to show cause.

The magistrate judge granted this motion in part, limiting OJ Commerce to discovery relevant to determining the citizenship of the LLC member at issue. The magistrate judge specifically noted that OJ Commerce was "not entitled (at that time) to take depositions of [National Christmas's] 'counsel, and all others involved in any investigations (or lack thereof) related to [its] response to'" the show cause order.

Following the additional discovery and further briefing, the magistrate judge recommended granting National Christmas's motion. The district judge adopted this recommendation and dismissed the case without prejudice. OJ Commerce did not appeal this order.

Shortly after the dismissal, OJ Commerce moved for sanctions against National Christmas and its counsel, invoking 28 U.S.C. § 1927 and the court's inherent power. It argued that both National Christmas and its counsel acted in bad faith by repeatedly misrepresenting the company's true corporate status,

which led it to expend numerous resources on this litigation. National Christmas responded in opposition to the motion and argued that there was no evidence of bad faith. It also supplied a declaration from its counsel, John Horgan, which revealed the following relevant information.

In March 2022, counsel attempted to avoid litigation by sending a demand letter to OJ Commerce under the name "National Christmas Products, LLC." When the parties failed to reach an agreement, counsel prepared the complaint using the documents supplied by his client, which included "the parties' agreement and the accounts receivable statement," both of which used the name "National Christmas Products, Inc." When the court issued its show cause order after the filing of the complaint, counsel investigated only OJ Commerce's corporate status because it was "[u]nder the mistaken impression" that OJ Commerce was the only LLC involved in the litigation.

The discovery period was extended multiple times for various reasons, and the deadline was ultimately set for December 13, 2023. One month prior to that date, National Christmas's CFO informed counsel that it was an LLC rather than an S-Corporation. "Immediately thereafter," counsel began its investigation into National Christmas's corporate structure and had to search for information that was neither immediately in their possession nor publicly available. In early December, while conducting discovery related to the instant case, counsel requested that National Christ-

mas's CFO obtain the missing membership information. On December 21, 2023, the CFO informed counsel that at least one limited partner of "an offshore entity in [National Christmas's] chain of membership" was a Florida citizen, so counsel requested more specific information about the timing of this individual's membership. On December 28, 2023, counsel was able to confirm that the individual had been a continuous limited partner in the subject LLC since May 2022, so National Christmas filed its initial motion to dismiss on January 4, 2024.

Following OJ Commerce's reply, the magistrate judge recommended denying the sanctions motion because it could not ascertain any bad faith on behalf of National Christmas or its counsel. Rather, the magistrate judge reasoned that, based primarily on Horgan's "unrebutted" declaration, "this entire episode was a most unfortunate case of negligence," which was insufficient to support sanctions under either § 1927 or the court's inherent power.

The magistrate judge recognized that National Christmas and its counsel "made a significant and substantial error," but found that, "as puzzling and troubling as this error was," OJ Commerce "presented no specific evidence of dishonest intent." Rather, OJ Commerce contended, without support, that National Christmas kept this information hidden as a "failsafe," which, in the magistrate judge's view, neglected that both parties wasted resources because of this error and there was no identifiable advantage to the change of jurisdiction. The magistrate judge also observed that OJ Commerce never recognized the error, despite receiving a demand

letter from and making payments to the LLC. The magistrate judge found that this point indicated that National Christmas and its counsel could also have "innocently" overlooked the jurisdictional issue. He also observed that, given that the mistake had already been made, it was reasonable to infer that National Christmas's counsel focused only on OJ Commerce's citizenship in response to the show cause order.

The magistrate judge further concluded that National Christmas's two-month delay in filing its motion to dismiss was not indicative of bad faith, as Horgan immediately began an investigation while the parties resolved discovery disputes, there was a change in lead counsel, and the holiday season occurred. He reasoned that the "convoluted web" of National Christmas's ownership made it reasonable to conduct a six-week investigation and for counsel "to wait until he had a complete understanding of the facts" before raising the issue with the court, which he promptly did before either party moved for summary judgment. The magistrate judge further concluded that OJ Commerce did not demonstrate that National Christmas's counsel knowingly tried to "vexatiously multipl[y] the proceedings," nor could he say based on the "dearth of evidence" before the court that counsel acted recklessly.

Over OJ Commerce's objections, the district judge entered an order summarily adopting the R&R and denying sanctions. OJ Commerce now appeals.

## II. STANDARD OF REVIEW

We review sanctions orders for an abuse of discretion. *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1237–38 (11th Cir. 2007). Under this standard, "we must affirm unless we find that the district court has made a clear error of judgment, or has applied the wrong legal standard." *Id.* at 1238 (citation modified); *see Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1222 (11th Cir. 2017).

## III. DISCUSSION

"Courts have the inherent power to police those appearing before them." *Purchasing Power*, 851 F.3d at 1223. "A court's inherent power is governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (citation modified). Similarly, § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927.

"A sanctions motion under either a court's inherent powers or § 1927 requires a showing that the party acted in bad faith." *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020). "Our circuit has linked inherent power sanctions with subjective bad faith." *Purchasing Power*, 851 F.3d at 1224. When considering whether to impose these sanctions, courts "should look for disobedience and be guided by the purpose of vindicating judicial authority." *Id.* at 1225;

*see Trump v. Clinton*, 161 F.4th 671, 689 (11th Cir. 2025). "Evidence of recklessness alone w[ill not] suffice." *Hyde*, 962 F.3d at 1310. A court's inherent "power must be exercised with restraint and discretion and used to fashion an appropriate sanction for conduct which abuses the judicial process." *Purchasing Power*, 851 F.3d at 1223 (citation modified).

A party moving for sanctions under § 1927 must show objective bad faith, which ordinarily "means an attorney acted 'knowingly or recklessly.'" *Hyde*, 962 F.3d at 1310 (quoting *Schwartz v. Millon Air, Inc.*, 341 F.3d 1220, 1225 (11th Cir. 2003)). This statute "imposes a 'high standard' that requires the moving party to show that the other side engaged in behavior that 'grossly deviates from reasonable conduct.'" *Id.* (quoting *Amlong*, 500 F.3d at 1240, 1242). A party "may . . . rely on evidence of subjective bad faith to make this showing," as "an act done in subjective bad faith is also more likely to be objectively unreasonable." *Id.*

In adopting the magistrate judge's full analysis of National Christmas and its counsel's actions, the district judge found no evidence of subjective or objective bad faith. OJ Commerce provides several arguments as to why these determinations were erroneous, none of which we find availing.

OJ Commerce first challenges the magistrate judge's reliance on Horgan's declaration and its characterization of this document as "unrebutted." It contends that the only reason this declaration went unrebutted was because it was erroneously denied discovery on the bad-faith issue.

OJ Commerce did request discovery at the motion-to-dismiss stage on the timing of National Christmas's and its counsel's knowledge of the jurisdictional defect, and the magistrate judge denied its request *at that time*. However, OJ Commerce never renewed such a request when it filed its sanctions motion. While OJ Commerce primarily relies upon *Itel Containers International Management, Inc. v. Puerto Rico Marine Management, Inc.*, 108 F.R.D. 96 (D.N.J. 1985), a case in which a district court allowed evidentiary submissions regarding concealment of a jurisdictional defect, this case is not binding on our Court. *Siemens Power Transmission & Distrib., Inc., v. Norfolk S. Ry. Co.*, 420 F.3d 1243, 1253 n.9 (11th Cir. 2005). We also cannot say that the district court committed reversible error in considering Horgan's declaration where OJ Commerce does not provide a basis for questioning the credibility of his statements.

Notwithstanding its challenge to Horgan's declaration, OJ Commerce contends that the record clearly evidences bad faith on behalf of both National Christmas and its counsel, and the district court erroneously evaluated the relevant facts and law. Particularly, it takes issue with the magistrate judge's reliance on *Purchasing Power* and contends that the facts of *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th 1340 (11th Cir. 2024), are more analogous to this case. However, the abuse of discretion standard affords considerable leeway and "recognizes the range of possible conclusions the trial judge may reach." *Amlong*, 500 F.3d at 1238 (citation modified). Under this deferential standard, we find that the district court

was within its discretion to rely on *Purchasing Power*, although it addressed only inherent-power sanctions, given its similar facts.

In *Purchasing Power*, the defendant sought to remove a case to federal court based on diversity jurisdiction and requested confirmation from opposing counsel of the plaintiff's citizenship. 851 F.3d at 1221. Opposing counsel responded that, based on information from his client, the plaintiff was not a citizen of the same states as the defendant. *Id.* During discovery, information was requested regarding the plaintiff's corporate structure; however, this information was not turned over and neither the parties nor the district court "took additional steps to verify that subject matter jurisdiction existed." *Id.* at 1222.

On appeal from an order granting summary judgment to the defendant, our Court recognized that the pleadings did not sufficiently allege the plaintiff's citizenship. *Id.* Our Court's observation prompted the parties to begin an investigation, which led them to conclude that diversity jurisdiction was lacking, as one of the LLCs in plaintiff's corporate structure was a citizen of the same state as the defendant. *Id.* The district court ultimately dismissed the case for lack of jurisdiction and imposed, as relevant here, inherent power sanctions against the defendant. *Id.* However, on appeal, our Court reversed the award of sanctions, finding that no party "acted with bad intentions." *Id.* at 1228.

Similarly, in this case, counsel trusted National Christmas to know its corporate structure and followed the information sup-

plied by the client when filing the instant complaint. Unfortunately, this information did not accurately reflect National Christmas's corporate structure at the time of filing. We recognize that, as the party initially seeking to invoke federal jurisdiction, National Christmas bore the burden of establishing that the parties were completely diverse, and both the company's and its counsel's pre-litigation investigation on this issue was significantly deficient. *See Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1085 (11th Cir. 2010). But, despite OJ Commerce's suggestions to the contrary, there was no evidence that National Christmas intentionally concealed that it was an LLC, that it knowingly supplied its counsel with false information regarding its corporate structure, or that either National Christmas or its counsel willfully failed to correct this information once the complaint had been filed.

OJ Commerce contends that National Christmas "doubled down" and violated a court order by failing to correct its jurisdictional allegation when responding to the May 2022 show cause order. But we find no abuse of discretion in the district court's determination that it was reasonable for counsel to focus only on OJ Commerce for this investigation, given counsel's mistaken belief that this was the only LLC involved in the case. And, notably, despite discrepancies in National Christmas's corporate name in the demand letter and complaint, neither party noticed these discrepancies or questioned whether federal jurisdiction was proper in the early stages of the case.

Further, by all indications, once National Christmas became aware of the jurisdictional error, it notified its counsel, who immediately began a thorough investigation to corroborate the veracity of this information. While it took 52 days for National Christmas to file its motion to dismiss from the date of that notification, we find no error in the determination that this was a reasonable time to complete the investigation given the complexity of National Christmas's corporate structure, the number of discovery issues ongoing at the time, and the coinciding of this investigation with the holiday season. The length of counsel's inquiry is especially excusable given the ramifications of his investigation—that it could, and did, lead to information requiring the dismissal of an already significantly litigated case.

In contrast, the defendant in *Oxford Mall* was fully aware that diversity jurisdiction was lacking but chose to sit on the information and actively continue with litigation for 15 months. 100 F.4th at 1345. Only when the defendant "was poised to lose the case" did it move to dismiss the action for lack of subject matter jurisdiction. *Id.* at 1343, 1345. Here, although there was a slight delay in National Christmas seeking dismissal, it still notified the court of the jurisdictional defect as soon as practicable and did so prior to either party filing a dispositive pretrial motion.

Finally, OJ Commerce insists that it was prejudiced by National Christmas's actions and that the district court overlooked this important point when declining to impose sanctions. We recognize that dismissal of this case for lack of jurisdiction not only

impacted National Christmas but also resulted in the dismissal of OJ Commerce's counterclaims, which it spent time and money litigating over the course of this two-year federal case. However, these counterclaims were dismissed *without prejudice*, and OJ Commerce has indicated that they have been refiled in state court.[1] And there was simply no evidence before the district court, beyond OJ Commerce's own conjecture, that National Christmas or its counsel knowingly and vindictively withheld the jurisdictional defect to prolong the litigation for its own benefit and to the detriment of its opposing party.

In short, we cannot say that the district court abused its discretion in determining that the conduct of National Christmas and its counsel amounted to no more than negligence, which, "by itself, does not warrant sanctions under a court's inherent powers or § 1927." *Hyde*, 962 F.3d at 1311. Although the overlooked jurisdictional defect in this case resulted in "a colossal waste of time and effort," our Court is not convinced that any party "acted with bad intentions." *Purchasing Power*, 851 F.3d at 1228. "We trust that the damage done to [National Christmas's and its counsel's] credibility,

---

[1] In its appendix, OJ Commerce has supplied our Court with several documents from the pending state court dispute between the parties, which it contends demonstrates bad faith and prejudice. National Christmas asks us to strike those portions of OJ Commerce's appendix and the reference to those documents in its brief, as these documents were not before the district court. We DENY AS MOOT this motion because our Court did not consider these state court documents in reaching our decision.

finances, and time is enough of a sanction to curb [its] conduct and to serve as a warning to future diversity jurisdiction litigants." *Id.*

## IV. CONCLUSION

We **AFFIRM** the district court's denial of OJ Commerce's motion for sanctions.